UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

QVC, INC. and QHEALTH, INC.,

      Plaintiffs,

vs.

YOUR VITAMINS, INC. d/b/a PROCAPS
LABORATORIES and ANDREW
LESSMAN,

      Defendants.

CURRENTLY PENDING IN
DISTRICT OF DELAWARE
C.A. No. 10-094 (SLR)

## MOTION FOR ORDER TO COMPEL COMPLETE RESPONSES, AND SUPPORTING MEMORANDUM

Plaintiffs QVC, Inc. and QHealth, Inc. (collectively "QVC"), through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 37, hereby move this Court to enter an Order requiring HSN LP (d/b/a Home Shopping Network) ("HSN") to provide full and complete responses to the requests for production of documents served by QVC on February 26, 2010 (the "Subpoena").

The grounds for this Motion are as set forth fully in the following supporting Memorandum.

### Memorandum in Support of Motion

### I.    INTRODUCTION

On February 5, 2010, QVC commenced an action for false advertising in the United States District Court for the District of Delaware against Andrew Lessman and Your Vitamins, Inc. (d/b/a ProCaps) ("Lessman" or "ProCaps"), which together promote and sell their vitamins and dietary supplements on the Home Shopping Network. (Moskin Decl ¶ 2, Ex. A.)  Defendants filed a counterclaim on March 1, 2010. (*Id.*)  On February 26 (two days after the Delaware court conducted a

scheduling conference), QVC served on HSN a subpoena seeking documents bearing on the claims in the Delaware litigation. (*Id.* ¶ 4, Ex. C.)

On March 12, 2010, HSN responded to the subpoena, admitting it had no documents responsive to two of the 13 categories but objecting to all of the remaining categories and declining to produce any documents. (Moskin Decl. ¶ 5, Ex D.)  From the morning of March 15 through the evening of March 17, HSN's counsel declined to respond to inquiries from QVC's counsel seeking to determine the actual grounds (if any) for HSN's refusal to comply with the subpoena.  Late on March 17, HSN's counsel responded by email identifying one alleged ground for the refusal to comply: namely, the purported overbreadth of the requests. (*Id.* ¶ 6, Ex. E.)  However, in an ensuing series of emails, counsel refused to specify any actual areas of overbreadth and refused QVC's offer to help reach a practical resolution. (*Id.*)  More recently, in a series of letters and during a telephone conference on March 26, HSN's counsel took a new position, namely, that HSN was refusing to comply because the Delaware court, in response to QVC's motion for expedited discovery from Lessman and Your Vitamins, had yet to issue a promised order expediting discovery among the parties which the court stated on the record during a February 24 hearing would be forthcoming.  HSN's new position is that it is somehow excused from responding to the subpoena in this forum because no order expediting discovery has yet issued in Delaware. (*Id.* ¶¶ 7–8, Exs. F–J.)  HSN's counsel further asserted that, although there is no motion pending in Delaware for a stay of discovery, the mere mention by Lessman's counsel that it did objected to discovery between the parties on QVC's motion for a preliminary objection (evidently disregarded by Judge Robinson in Delaware) somehow entitles it to disregard the subpoena in this Court. (*Id.*)  Defendants made no motion for a stay and, as noted, Judge Robinson evidently disregarded their fleeting objection to discovery by concluding the February 24 hearing by repeatedly directing QVC and Lessman to submit discovery to the court and promising

NYC_779336.1

to order expedited discovery. (*Id.* ¶ 8, Ex. B.)  The parties (including Lessman and ProCaps) did

submit proposed discovery to the court on March 3, and QVC served its formal responses to

defendants in Delaware on March 26 – pursuant to the defendants' own proposed schedule. (*Id.* ¶ 3)

There is no motion pending in Delaware for a stay of discovery (and never has been) and there has

never been any suggestion by plaintiffs or defendants or the court in Delaware that third party

discovery be stayed. (*Id.* ¶ 8, Ex. B.)  As QVC has explained to HSN (*Id.* Exs. G, I, J), even if there

were pending in Delaware a motion for a stay between the parties, and even if such a motion were

granted, it would not authorize HSN to grant itself a protective order in this forum.

## II.   FACTUAL BACKGROUND

### A.   The Underlying Action

As set forth in the complaint in the Delaware action (Moskin Decl. Ex. A (the "Complaint")),

QVC operates the leading nationally broadcast cable television shopping network and the website

<qvc.com>, at which it sells and offers for sale a wide variety of consumer products, among them a

line of dietary supplements under the trademark NATURE'S CODE, with sales of hundreds of

millions of dollars. (Complaint ¶¶ 11–13.)  Among the food supplements sold by QVC are products

named NATURE'S CODE Hair, Skin & Nails and NATURE'S CODE Resveratrex. (*Id.* ¶14).

Defendants, Lessman and ProCaps, produce a line of vitamin products sold under the name

PROCAPS, including PROCAPS Healthy Hair, Skin & Nails and Resveratrol-100, which compete

with the NATURE'S CODE Hair, Skin & Nails and Resveratrex products sold by QVC. (*Id.* ¶¶ 18, 25,

41).  Defendants promote their Healthy Hair, Skin & Nails and Resveratrol-100 products on the Home

Shopping Network, which competes directly with QVC. (*Id.* ¶¶ 19, 20).

In advertising and promoting their PROCAPS Healthy Hair, Skin & Nails and Resveratrol-100

products, defendants have made numerous false and misleading representations concerning QVC's

3

NATURE'S CODE Hair, Skin & Nails and Resveratrex products. (*Id.* ¶¶ 26–27, 42–43).  In order to put a stop to this activity, QVC filed its Complaint in this action in the District of Delaware on February 5, 2010 alleging *inter alia* false advertising, unfair competition, and violation of the Delaware Consumer Fraud Act. (*Id.* ¶¶ 57–83).  As set forth in the Complaint, Defendants' false and unsubstantiated claims include the following: (i) QVC's dietary supplements include a carcinogen (*Id.* ¶ 27(c), (d)); (ii) QVC's dietary supplements are "unhealthy" [sic] (*Id.* ¶ 27(a)); (iii) QVC's dietary supplements are of poor quality, and the Q in QVC means questionable (*Id.* ¶ 43(a)); (iv) QVC's dietary supplements use unwholesome artificial flavors and sweeteners (*Id.* ¶ 27(d), (p), (t)); (v) QVC's dietary supplements have no health benefits (*Id.* ¶ 27(d)); (vi) Certain active ingredients in QVC's dietary supplements are inert and have no benefits. (*Id.* ¶ 27(l)); (vii) QVC's tablets are somehow inherently inferior to defendants' capsules (*Id.* ¶ 43(i)); and (viii) QVC and its products are "sleazy and deceptive" (*Id.* ¶ 27(a)).

QVC further moved for a Preliminary Injunction and Expedited Discovery on February 9, 2010.  On February 24, the district court in Delaware held an initial scheduling conference in response to QVC's request during which the court directed the parties to submit proposed discovery, and stated a plan for expedited discovery would be forthcoming:

> I'm going to have each of you file with me by Monday, end of the day Monday, what you propose to be appropriate focused discovery to get this on the fast track, and included in that, I would appreciate -- well, so I'd like to see that by Monday.  What I will do is, I will take those plans and I will decide what is appropriate and focused and issue an order consistent with my decisions as to that.  So I think that's our first step. (Tr. p. 14, l. 12–20; Moskin Decl. Ex. B.)[1]

---

[1] The Court added:

I mean, I am going to move this case forward expeditiously.  Depending on the discovery, I believe that looking at the discovery that each of you would deign to take in furtherance of resolving the pending motions, I will have a better idea of how expeditious this whole process has to be.  But I am assuming that we're not going to be relaxed about it because the blogs are still up.  But that does not mean I am going to go

The court did not stay the proceedings or give any other order, and defendants have never moved for a stay of discovery from them much less from third parties. (Moskin Decl. ¶ 8.)

**B.    Third Party Discovery Subpoena Served on HSN, Issued In This Court**

QVC served HSN with a third-party subpoena issued from this Court on February 26. The Subpoena (Moskin Decl. Ex. C) requests documents regarding *inter alia* HSN's relationship with Lessman, Lessman's appearances on HSN to promote the products at issue in the underlying litigation and records HSN has regarding Lessman's statements about the QVC products in issue. The Subpoena has a return date longer than the 14 days required by FRCP 45 (c)(2)(B), with responsive documents due on March 15, 2010. To date, no documents have been produced. (Moskin Decl. ¶ 9.)

On March 12, HSN (by its counsel, Joseph Shaheen of Akerman Senterfitt) served its formal Response to Subpoena. (Moskin Decl. Ex. D.) The Response was accompanied by no documents. Consistent with QVC's allegations in the underlying action that Lessman's criticisms of the NATURE'S CODE products are unsubstantiated by any research or other empirical evidence (and hence are false as a matter of law[2]), HSN admitted in its responses to Requests 4 and 5 that it had no such empirical research. Its response to Request 6 indicated that there were probably no responsive documents concerning the claims made by defendants concerning the quality or contents of the subject NATURE'S CODE supplements. It also admitted in its response to Request 8 that it had no documents concerning public comments about the accused false advertising "other than public blog

---

quite as quickly as plaintiff perhaps wants. But I want to see the discovery first. (Tr. p. 15, l.4-13.)

[2]  In *Novartis Consumer Health Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578 (3d Cir. 2002), the Third Circuit explained that "although the plaintiff normally has the burden to demonstrate that the defendant's advertising claims is false, a court may find that a completely unsubstantiated advertising claim by the defendant is per se false without additional evidence from the plaintiff to that effect." *Id.* at 590

entries already available to Plaintiffs." The remaining responses, 1–3, 7, and 9–13 simply set forth general or boilerplate objections offering no specific information what, if anything, HSN has done to comply with the subpoena or why HSN declined to produce documents. (*Id.*)

### C.   Discussions to Resolve HSNs Failure to Produce Under Rule 34(b)

HSN's March 12 response was accompanied by a cover letter inviting QVC to "have a discussion . . . to attempt to resolve as many of these issues as possible." (Moskin Decl. Ex. D.) However, in response to emails from QVC's counsel from March 15–17, HSN first declined to respond at all. Later, from March 17–19, HSN's counsel stated that HSN's one substantive objection was that the requests were somehow overbroad, but that he was too busy to talk or respond in substance to QVC's counsel's 7 emails to explain in what respect. HSN has yet to offer any specific or substantive explanation which, if any, of the requests it contends are overbroad or why. (*Id.* Ex. E.[3])

---

[3] Specifically , on March 15, QVC's counsel wrote to Mr. Shaheen by email that "[t]he objections unfortunately give no insight into the actual reasons HSN has declined to produce any documents." Mr. Moskin requested that Mr. Shaheen specify a time to talk. After receiving no response, Mr. Moskin sent a follow-up email on March 17 at 10:59 a.m. Mr. Shaheen responded by email that evening at 7:15 pm, asking Mr. Moskin if the discussion could wait until "Monday or Tuesday," a full week after Mr. Moskin's initial request for a telephone discussion about the unresponsive response, and also a full week after the expiration for the time for production. Mr. Moskin's email response at 7:37 pm expressed sympathy, but impressed upon Mr. Shaheen that QVC needed to know "if there is some genuine reason why HSN has refused to produce ANY documents," if it is "stonewalling," or if it is a simple delaying tactic. Mr. Moskin further emphasized the need for urgency, as QVC had filed for a preliminary injunction.

Mr. Shaheen responded that evening at 10:44 pm by email that "HSN is not adverse to a pared down production" but provided no reasons why HSN was actually adverse to any production at all, citing a potential discovery order regarding the parties. In this email, Mr. Shaheen for the first time communicated to Mr. Moskin, nearly three weeks after receiving the subpoena, that the "discovery request seemed a little premature." At 10:59 pm on March 17, Mr. Moskin emailed in response to explain that "Judge Robinson said she was going to expedite the process, not that she was going to limit the scope of discovery." The email further assured that QVC was not seeking to "overburden" QVC with the document requests, and offered to clarify what was really needed and "save your client needless work." As HSN made no response to that email, Mr. Moskin sent a follow-up email at 7:03 pm on Thursday, March 18. Mr. Shaheen responded by email within a few minutes at 7:05pm to again request delay until "Monday or Tuesday."

After being unable to resolve the matter during the week of March 15–19, Mr. Moskin sent a reminder email on Monday March 22 at 7:14 am to request a time to talk, or a confirmation that HSN would produce the documents.  At 12:43 pm, Mr. Shaheen faxed a letter to Mr. Moskin stating that he had reviewed the matter with his client and reviewed the transcript of the preliminary hearing with Judge Robinson, and had decided that HSN would not respond to the subpoena issued in this Court until Judge Robinson confirmed the time for QVC and the Defendants in the underlying action to respond to discovery in Delaware.  Mr. Shaheen further refused to discuss the responses, contrary to his promises and protestations since ten days prior.

On March 23, Mr. Moskin responded by letter (Moskin Decl. Ex. G), observing that HSN's position amounted to "granting itself a protective order based on a self-serving guess why a different court has been delayed entering a promised order."  Expressing concern that the entire exchange of emails the prior week merely amounted to a delaying game, giving HSN time to construct a new excuse for not complying with the subpoena issued from this Court, Mr. Moskin made a further attempt to avoid motion practice, insisting that HSN produce "the documents that should have been produced ten days ago."

Mr. Shaheen responded by faxed letter late that day (Moskin Decl. Ex. H) reiterating the statements in his previous emails and letter, including an incorrect contention that Delaware defendants

---

Mr. Moskin responded by email at 8:24 pm that night.  "We were supposed to have had an answer a week ago.  Since then, after ignoring my messages for two days, you have managed to write me a number of emails, in none of which have you attempted to provide any substantive explanation for your objections."  Mr. Moskin further asked for further clarification of the objection for undue burden so he might address it and avoid motion practice.

Mr. Shaheen emailed in response at 9:20 pm that he would speak Monday or Tuesday.  At 10:28, Mr. Moskin wished him luck in the hearing, and reiterated that he remained "deeply concerned" about Mr. Shaheen's refusal to provide any substantive comments and HSN's refusal to produce any documents.  Since Mr. Shaheen had made it clear that he would not discuss the matter that day, the following day, or over the weekend, Mr. Moskin urged Mr. Shaheen to contact him on Monday.

NYC_779336.1

"have pending a request to not allow any discovery at all." In fact, defendants have never made a motion for a stay and there is no such motion pending now. Nor have defendants (or HSN) asked the Delaware court to stay or delay third party discovery. (Moskin Decl. ¶ 8). Shortly thereafter, Mr. Moskin replied by fax letter (*Id.* Ex. I) explaining: "I am completely unaware of any request by defendants to preclude discovery, as you suggest, nor can I even imagine under what rule or what theory such a request could even be made. To the contrary, defendants have served their own discovery requests and filed them with the Court seeking the Court's direction that QVC be required to answer the requests." On March 26, Mr. Shaheen and Mr. Moskin spoke by telephone, and Mr. Shaheen confirmed that HSN would not comply with the subpoena. He indicated HSN would be seeking a protective order to delay compliance. Mr. Moskin sent a final letter on March 26 confirming the substance of the call. (Moskin Decl. Ex. J.) There has been no further response from HSN. Although HSN has made clear its refusal to respond and has indeed produced no documents, thus far, HSN has made no motion as promised. Hence, QVC moves to compel.

## III.   ARGUMENT

HSN's ever-changing excuses for refusing to produce documents suggest HSN never intended to respond but has simply been delaying and evading its responsibilities. Its failure to move for a protective order as promised is consistent with this pattern of unwarranted delay. In its letters, emails and the phone call between counsel, it has identified no grounds to believe that even if defendants in the underlying action had moved to stay discovery in that proceeding, it would excuse HSN from responding to the Subpoena. And, at any rate, Lessman and Your Vitamins have made no such motion and no such motion to excuse HSN from responding in this forum. To the contrary, at the conclusion of the only scheduling conference in Delaware, Judge Robinson stated (repeatedly) that she intended to expedite discovery in the underlying action and directed both plaintiffs and defendants to submit

proposed discovery requests, which each side has done.  As QVC has argued in its letters to HSN's counsel and when counsel for the parties spoke, even if Judge Robinson were to grant defendants some form of stay in Delaware, that would not itself excuse HSN from responding to the subpoena in this Court.  HSN has never responded to this simple logic.  Nor has it ever identified the basis for its contention that some motion for a stay has been made or is pending in Delaware.  The very notion would appear to be but a fiction.

In the meantime, HSN has produced no documents in response to any of the thirteen categories and refused to identify any substantive reason it can not do so.  Despite QVC's expressed willingness to address any genuine concerns of overbreadth, HSN has failed to substantiate its only stated objection to production with any specific explanation and has given no reason to believe it would face any actual or meaningful burden responding to discovery.  As QVC has noted, HSN can not simply grant itself a protective order.

Accordingly, HSN should be required to respond to the Subpoena forthwith by producing all responsive documents in its possession.  Moreover, given HSN's dilatory tactics and the lack of merit or even any factual basis for its contention there is pending a motion to stay discovery in Delaware, pursuant to Fed. R. Civ. P. Rule 37(a)(5)(A), QVC should be awarded its costs and fees for making this needless motion.

## Conclusion

For the foregoing reasons, HSN should be directed forthwith to comply with the Subpoena, together with such other and further relief as the Court may deem just and proper.

Counsel for QVC certifies that they have fulfilled their obligation to confer in good faith prior

NYC_779336.1

to filing this Motion, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Local Rule

3.01. (*See* Moskin Decl. ¶¶ 6–8, Exs. E–J.)


_Lauren Valiente_

Lauren L. Valiente (FBN 034775)
FOLEY & LARDNER LLP
100 North Tampa Street, Suite 2700
Tampa, FL  33602-5804
(813) 225-5443
(813) 221-4210
lvaliente@foley.com
Attorneys for Quantum Foods, LLC

NYC_779336.1

## Certificate of Service

I HEREBY CERTIFY that on March 30, 2010, I (a) filed the foregoing document with the Clerk of the Court; and (b) furnished a copy of the foregoing document by telecopy and U.S. Mail to the following:

L. Joseph Shaheen, Jr.
AMERMAN SENTERFITT
Sun Trust Financial Centre, Suite 1700
401 E. Jackson Street
Tampa, Florida 33602-5250
Fax: (813) 223-2837
*Attorneys for HSN LP*


Rodger Dallery Smith, II
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899
Fax: (302) 658-3989
*Attorneys for Defendants*
*Your Vitamins, Inc. and*
*Andrew Lessman*

_____
Attorney

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

QVC, INC. and QHEALTH, INC.,

      Plaintiffs,

vs.

YOUR VITAMINS, INC. d/b/a PROCAPS
LABORATORIES and ANDREW
LESSMAN,

      Defendants.

CURRENTLY PENDING IN
DISTRICT OF DELAWARE
C.A. No. 10-094 (SLR)

## DECLARATION OF JONATHAN MOSKIN

I, Jonathan E. Moskin, hereby declare:

1.  I am an attorney admitted to practice before the bar of the State of New York and am admitted pro hac vice in the District of Delaware in the underlying action in this matter. I am a partner of Foley & Lardner LLP, attorneys for QVC, Inc. and QHealth, Inc. (collectively "QVC") in this action. I have personal knowledge of the matters set forth herein.

2.  On February 5, 2010, QVC commenced an action for false advertising in the United States District Court for the District of Delaware against Andrew Lessman and Your Vitamins, Inc. (d/b/a ProCaps). The Complaint is attached as Exhibit A hereto. Defendants served and filed an answer and counterclaims on March 1, 2010.

3.  On February 24, the Court in Delaware conducted an initial hearing on QVC's motion for a preliminary injunction and expedited discovery, at the conclusion of which presiding Judge Robinson indicated she intended to expedite discovery and directed the parties to submit

1

proposed discovery requests on or before March 3, 2010, which both parties did. The transcript

of the hearing is attached hereto as Exhibit B. (Following defendants' proposed discovery

schedule, QVC also served responses to discovery on March 26.)

4.    Two days after the hearing, on February 26, QVC served on HSN a subpoena seeking

documents bearing on the claims in the Delaware litigation. See Exhibit C hereto.

5.    HSN's March 12 response to the subpoena is attached as Exhibit D hereto. HSN

produced no documents with its response to the subpoena.

6.    Attached hereto as Exhibit E is a string of emails between me and HSN's counsel,

Joseph Shaheen. From the morning of March 15 through the evening of March 17, HSN's

counsel declined to respond to my emails seeking to determine the actual grounds (if any) for

HSN's refusal to comply with the subpoena. On the evening of March 17, HSN's counsel

responded by email, and with prompting from me, identified one alleged ground for the refusal

to comply: namely, the alleged overbreadth of the requests. However, in the ensuing series of

emails, counsel refused to specify any actual areas of overbreadth.

7.    From March 22 – March 26, HSN's counsel and I exchanged a series of letters and

engaged in telephone conference on March 26 to try to resolve the matter. These letters are

attached hereto in chronological order as Exhibits F – J, including my March 26 letter (Ex. J)

confirming the substance of the call. I have received no response to the letter. Nor has HSN

carried through with the promised (or threatened) motion for a protective order it referred to

during the call.

8.    In the letters and telephone call, HSN took a new position (no longer objecting on

grounds of overbreadth), that HSN need not respond to the subpoena pending issuance by the

Delaware court of the order expediting discovery promised at the conclusion of the February 24

2

hearing.  HSN's counsel further stated his belief that defendants' in the underlying action were in

some way objecting to discovery between the parties.  To the contrary, defendants in the

underlying Delaware action have never requested a stay and have never objected to or requested

a stay of third-party discovery, such as the discovery requested by the subpoena herein.  Despite

my statements to this effect, HSN has refused to comply comply with the subpoena.

9.  To date, HSN has identified no actual grounds to contend any one or more of QVC's

document requests is overbroad; has identified no actual grounds to support its contention that a

stay has ever been sought in the underlying action in Delaware, and has produced no documents

in response to the subpoena.

I hereby declare under penalty of perjury this 30th day of March, 2010 that the foregoing is true and correct to the best of my knowledge and belief

By: _____

Jonathan E. Moskin

3

**Moskin Declaration Exhibits:**

Exhibit A:      Complaint filed February 5, 2010

Exhibit B:      Transcript of scheduling February 24, 2010 conference with Delaware court

Exhibit C:      Subpoena served on HSN on February 26, 2010

Exhibit D:      HSN reponse to subpoena and cover letter dated March 12, 2010

Exhibit E:      Email chain between QVC counsel and HSN counsel regarding the lack of
                subpoena responses March 15 to March 22, 2010

Exhibit F:      Letter between HSN counsel and QVC counsel dated March 22, 2010

Exhibit G:      Letter between QVC counsel and HSN counsel dated March 23, 2010

Exhibit H:      Letter between HSN counsel and QVC counsel dated March 23, 2010

Exhibit I:      Letter between QVC counsel and HSN counsel dated March 23, 2010

Exhibit J:      Letter between QVC counsel and HSN counsel dated March 26, 2010

NYC_782676.1

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QVC, INC. and QHEALTH, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. |
| | ) | |
| v. | ) | |
| | ) | |
| YOUR VITAMINS, INC. d/b/a PROCAPS | ) | JURY TRIAL DEMANDED |
| LABORATORIES and ANDREW | ) | |
| LESSMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

QVC, Inc. and QHealth, Inc., by their attorneys, for their complaint against Your

Vitamins, Inc. (d/b/a/ Procaps Laboratories) and Andrew Lessman (collectively "Defendants"),

allege as follows:

## PARTIES AND JURISDICTION

1.     QVC, Inc. ("QVC") is a Delaware corporation, having an address at 1200 Wilson

Drive, West Chester PA.

2.     QHealth, Inc. ("QH") is a Delaware corporation, having an address at 1200

Wilson Drive, West Chester PA and is a wholly owned subsidiary of QVC.

3.     Upon information and belief, Your Vitamins, Inc. is a Nevada corporation doing

business as Procaps Laboratories and having an address at 430 Parkson Road Henderson Nevada

89011 (hereinafter "Procaps").

4.     Andrew Lessman is an individual and, upon information and belief, the principal

owner of Your Vitamins, Inc., having an address at 430 Parkson Road Henderson Nevada 89011

(hereinafter "Lessman").

5.      This is an action for use of false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and the Delaware Deceptive Trade Practices Act; Del. Code Ann. Tit. 6 § 2531 et seq. (2009); for unfair competition under Delaware and false advertising and unfair competition under Delaware common law.

6.      This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over the claims arising under the statutory and common law of the State of Delaware pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

7.      Upon information and belief, at all times material to this action, each of the Defendants was the agent of each of the other Defendant; that the acts of each of the Defendants were in the scope of such relationship; that in doing the acts complained of herein, each of the Defendants acted with the knowledge, permission, and/or consent of the other Defendant; and that each of the Defendants aided and/or abetted the other Defendant in the conduct complained of herein.

8.      This Court has personal jurisdiction over Lessman because, as an officer and principal owner of Procaps, and, as set forth more fully herein, together with Procaps and the non-party, HSN LP, a Delaware Limited Partnership that operates the Home Shopping Network, he conducts substantial business within this district related to the unlawful activities at issue in this Complaint; because the acts complained of herein have been directly and specifically intended to cause injury to QVC and QH in this district, and because the harm suffered by Plaintiff within this district flows directly from such business conducted by defendants.

9.     This Court has personal jurisdiction over Procaps because, together with

Lessman, and, as set forth more fully herein, as part of its business relationship with HSN,

described more fully herein, it conducts substantial business within this district related to the

unlawful activities at issue in this Complaint; because the acts complained of herein have been

directly and specifically intended to cause injury to QVC and QH in this district, and because the

harm suffered by Plaintiff within this district flows directly from such business conducted by

defendants.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial

part of the events giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

11.     QVC operates the leading nationally broadcast cable television shopping channel

and the website qvc.com at which it sells and offers for sale a wide variety of consumer products.

12.     Since at least as early as 1997, QVC and QH (including its predecessor entity)

have promoted and sold on QVC's television channel and website a line of vitamins and dietary

supplements under the trademark NATURE'S CODE.

13.     Since its introduction, the NATURE'S CODE line of vitamins and dietary

supplements, sold exclusively through QVC, has been very successful, with sales of hundreds of

millions of dollars of such products.

14.     Among the NATURE'S CODE food supplements sold by QVC and QH are

NATURE'S CODE "Hair, Skin & Nails" and NATURE'S CODE "Resveratrex".

15.     The high quality of QVC's NATURE'S CODE Hair, Skin & Nails product has

been and is certified by the United States Pharmacopeia ("USP"), the leading standards–setting

authority for prescription and over–the–counter medicines and other healthcare products manufactured or sold in the United States.

16.     QVC's NATURE'S CODE Resveratrex products (in tablet or liquid form), because they do not fall under USP governance, but are all manufactured under the Center for Professional Innovation & Education's "cGMP" guidelines at a certified facility, and are guaranteed to be of the highest quality.

17.     The marketing of vitamins and dietary supplements via television shopping channels is a highly competitive market that is extremely dependant on brand loyalty, such that damage to the reputation of a brand can directly cause a loss of customers.

18.     Defendants Lessman and Procaps produce a line of vitamins and dietary supplements sold under the name PROCAPS that compete directly with the NATURE'S CODE vitamins and dietary supplements sold exclusively through QVC.

19.     Although Lessman and Procaps at one time offered their products for sale on the QVC network, they now promote their products through Home Shopping Network ("HSN"), a nationally broadcast cable network and operator of the website hsn.com, which competes directly with QVC's television network and website.

20.     Lessman and Procaps also promote and sell their PROCAPS vitamins and dietary supplements at the website procapslabs.com.

21.     Upon information and belief, Lessman and Procaps further promote their PROCAPS vitamins and dietary supplements by posting videos – including videos containing the false and misleading representations at issue herein – on YouTube.

22.     Among the dietary supplements offered for sale by defendants under the trademark PROCAPS are a products called "Healthy Hair, Skin & Nails" and "Resveratrol-100."

23.     Upon information and belief, defendants' PROCAPS Healthy Hair Skin & Nails

product is offered for sale and sold throughout the United States, including in this judicial

district, at the website operated by Procaps, procapslabs.com, and on the HSN television network

and website, hsn.com.

24.     Upon information and belief, defendants' PROCAPS Resveratrol-100 product is

offered for sale and sold throughout the United States, including in this judicial district, at the

website operated by Procaps, procapslabs.com, and on the HSN television network and website,

hsn.com.

A.   Defendants' Deceptive Promotion of PROCAPS Healthy Hair Skin & Nails

25.     In advertising and promoting their Healthy Hair Skin & Nails product,

defendants' have identified as their principal or only direct competition the NATURE'S CODE

"Hair, Skin & Nails" product sold by QVC.

26.     In advertising and promoting their Healthy Hair Skin & Nails product,

defendants' blog (at http://andrew.procapslabs.com/default.aspx) is devoted principally to

denigrating the quality QVC's competing products - and only QVC's competing products -

through the use of false and completely unsubstantiated allegations.

27.     In advertising and promoting their Healthy Hair Skin & Nails product (which,

upon information and belief, are not USP certified), defendants have made numerous false and

misleading representations concerning QVC's NATURE'S CODE "Hair, Skin & Nails" product,

including the following:

   a.     In a statement published on their website under the untrue headline
   "QVC's Hair Skin and Nails isn't Healthy (sic)...it is just sleazy and deceptive", Mr.
   Lessman and Procaps make numerous untrue statements disparaging the quality of
   QVC's Nature's Code Hair Skin & Nails product, including referring to the
   NATURE'S CODE products as "inferior vitamins", "a low quality product" asserting
   an alleged "lack of quality of their vitamins" and calling them "a terrible imitation".

5

b.     There is no factual basis for Lessman's and Procaps' assertions as aforesaid that the NATURE'S CODE USP certified dietary supplements are unhealthful, low quality, lacking quality or inferior.

c.     In a further statement published on their website under the headline "QVC's Hair Skin and Nails…Over 99% Additives!" (a headline which is itself false and misleading) Lessman and Procaps identify as a "sobering fact" about QVC's NATURE'S CODE "Hair, Skin & Nails" that it includes Hyaluronic Acid, of which defendants assert: "there is no science that shows it offers any benefit when taken orally and there is a significant body of troubling research that connects it to cancer". To emphasize the alleged risk, defendants add that Lessman has "followed the research on HA for over 30 years", thus implying he has special expertise on the subject.

d.     There is no factual basis for Lessman's and Procaps' assertions as aforesaid that Hyaluronic acid, a naturally occurring compound found in the human body, is a carcinogen or that "there is no science that shows [hyaluronic acid] offers any benefit when taken orally".

e.     In a further statement published on their website Mr. Lessman and Procaps state falsely about the NATURE'S CODE "Hair, Skin & Nails" that although it includes biotin (the efficacy of which defendants do not dispute) the biotin "sadly is buried in a mass of tableting additives, including two artificial colors and there is nothing else in the formula to support its benefits. This is basically a very big, yellow Biotin tablet with 99% additives and not much more."

f.     There is no factual basis for Lessman's and Procaps' false comparison between tablets and capsules.  Although there is no scientific data that capsules are superior to tablets, Mr. Lessman incorrectly leads his audience to believe that capsules are superior while failing to provide any information to explain the distinction and thus distorts the fact that part of the very benefit of tablets is that the active ingredients are delivered in a matrix of processing aids and excipients designed to ensure that the nutrients are readily available for absorption and that size of the pill is thus largely a function of the matrix used to support the active ingredients.

g.     There is no factual basis for Lessman's and Procaps' false implication that there is anything harmful regarding the presence in NATURE'S CODE "Hair, Skin & Nails" product of FD&C Yellow #5 and FD&C Yellow #6.

h.     In fact, FD&C Yellow #5 and FD&C Yellow #6 have been in use throughout the food industry for many years and are deemed "generally recognized as safe" by the FDA.

i.     In a further statement published on their website Mr. Lessman and Procaps state falsely as a "sobering fact" about NATURE'S CODE "Hair, Skin & Nails" fact that the product includes silica, which defendants assert is "virtually insoluble (think

of glass or sand)". Lessman and Procaps further falsely imply  superiority of the silica Procaps uses in its own competing product.

  j. There is no factual basis for Lessman's and Procaps' assertions as aforesaid in that the particle size of the silicon dioxide in NATURE'S CODE "Hair, Skin & Nails, has been structure engineered to maximize absorption.

  k. Upon information and belief, the silica used in Procaps' competing supplement has no higher absorption rate than does the NATURE'S CODE product offered by QVC.

  l. In a further statement published on their website Mr. Lessman and Procaps state falsely as a "sobering fact" about NATURE'S CODE "Hair, Skin & Nails" that it includes lutein in allegedly insufficient qualities and that "Lutein will NOT improve the growth of your hair, skin and nails."

  m. There is no factual basis for Lessman's and Procaps' assertions as aforesaid, and QVC makes no health claim that that lutein will improve the growth of hair, skin and nails.  By attributing to QVC a statement that it and QH have not made, Mr. Lessman and Procaps falsely denigrate the quality of plaintiffs' product.

  28. The unambiguous message and necessary implication conveyed by the defendants' misrepresentations is that plaintiffs' NATURE'S CODE Hair Skin & Nails product is a carcinogen, is dangerous and/or is of poor quality and greatly inferior to defendants' competing product.

  29. To further disparage QVC and its products, Lessman and Procaps falsely accuse QVC of trademark infringement for use of the descriptive phrase "Hair, Skin & Nails" for their NATURE'S CODE product when in fact neither Lessman nor Procaps own exclusive rights in the descriptive phrase, which is also used by third parties, and when neither Lessman nor Procaps own any registered rights in the phrase or have ever sought to establish legal rights in the descriptive phrase.

  30. Defendants have never objected directly to QVC that its NATURE'S CODE Hair Skin & Nails infringes any trademark rights defendants purport to own or explained the basis for any such claim.

31.    Defendants' foregoing representations are materially false and misleading.

32.    Upon information and belief, said representations of defendants are unsubstantiated, and, upon information and belief, defendants do not possess scientific evidence to support the above representations challenging the quality and safety of QVC's products.

33.    Consistent with the unambiguous message and necessary implication conveyed by defendants' misrepresentations as aforesaid, and as set forth more fully below, numerous consumers exposed to defendants' misrepresentations have concluded mistakenly that the NATURE'S CODE Hair Skin & Nails product offered by QVC is indeed a carcinogen, is dangerous and/or is of poor quality and greatly inferior to defendants' competing product. .

34.    While appearing on-air on HSN, defendant Lessman further directed viewers to read the above false statements posted on his blog, and HSN continues to make available videos of Mr. Lessman's on-air presentations at its website, hsn.com.

35.    Defendants' false and misleading statements as aforesaid have directly injured QVC and caused lost sales.

36.    Among the comments of consumers published by defendants on their website in response to defendants' false and misleading representations are the following:

a. "Thanks for setting the record straight. I knew QVC's product was falsely represented."

b. "I am SO glad that you are speaking out about this! I saw this product on TV and almost called to yell at them. I got SO MAD and I feel so sorry for anyone spending their money on those vitamins. I hope you are able to fight them about the name - SO UNETHICAL. Anyone who has ever watched your shows or taken your product knows the difference! We are educated (thanks to you) and WILL NOT BE FOOLED."

c. "I have decided to STOP purchasing anything from QVC until they post a retraction and apology. I sent them an email explaining my decision. … I ask that others join me in a boycott of QVC and please send QVC an email explaining your decision."

8

d. "It's astounding! How do these products get past their quality department?! They are treading into dangerous territory when they are dealing with people's health, and the utter lack of quality control. I mean let's face it, if you buy an ugly ring, it doesn't matter you don't have to wear it but if you buy vitamins year after year thinking you are getting benefits and you aren't. wow. It is criminal."

e. "In a world of charlatans and hype, it's comforting to know that we all have a 'partner' in this vitamin maze - YOU! I respect and appreciate your knowledge and integrity when it comes to manufacturing your supplements and only trust your products."

f. "With 99% additives and just the little bit of biotin, the [QVC] product cannot begin to have the results that Andrew's HSN--Hair, Skin, and Nails ...product has. It is also in a hard tablet form and the good ingredients will not be as easily absorbed as if they were in a powder form."

g. "My friend's wife ordered QVC's Hair, Skin, and Nails product and then promptly returned it after reading this blog. They keep speaking about USP as if it's better than a no additive product in capsule form."

37.     In publishing on their website and selectively responding to comments of their readers and viewers while failing to correct their mistaken conclusions regarding the quality of QVC's products and the integrity of QVC, and in continuing to allow such comments to remain in print without correction, defendants Lessman and Procaps have adopted as their own these false, disparaging and injurious statements.

38.     Exemplifying Lessman's and Procaps' selective and misleading efforts to foster confusion, defendants conspicuously failed to respond to a question of one angry customer who asked why, if they criticized QVC's use of silica in its product, Lessman's and Procaps' own Healthy Hair Skin & Nails product also includes silica.

39.     Defendants' foregoing representations are materially false and misleading.

40.     Upon information and belief, Lessman's and Procaps' false and misleading comments directed at QVC and its products (and only QVC and its products) were made maliciously and with a deliberate intent to mislead consumers and cause injury to QVC.

B. Defendants' Deceptive Promotion of Resveratrol-100

41.     In advertising and promoting their Resveratrol-100 product, defendants' have

identified as their principal or only direct competition QVC's NATURE'S CODE "Resveratrex"

product (in its liquid and tablet forms)

42.     In advertising and promoting their Resveratrol-100 product, defendants' blog (at

http://andrew.procapslabs.com/default.aspx) is devoted principally to denigrating the quality

QVC's competing Resveratrex products, and only QVC's competing products, through the use of

false and completely unsubstantiated allegations.

43.     In advertising and promoting their Resveratrol-100 product, defendants' have

made numerous false and misleading representations concerning QVC's NATURE'S CODE

"Resveratrex" product, including the following:

      a.     In a statement published on their website under the headline "A Few
Words on Resveratrol and QVC's Colorful and Sweet Versions" Lessman and
Procaps summarize their false views of QVC's products as follows: "I will try to keep
it brief, but these products are very disappointing and apparently misleading.  The Q
in QVC has always stood for Quality, but when it comes to their Resveratrol
products, the Q might better stand for Questionable."

      b.     There is no factual basis for Lessman's and Procaps' assertions that the
NATURE'S CODE Resveratrex products offered by QVC are disappointing and of
questionable quality.

      c.     Lessman and Procaps falsely characterize as "sad" that NATURE'S
CODE Resveratrex uses Carmine coloring, not natural grape extracts, and although
Carmine is a natural product, defendants nonetheless find fault with QVC by stating,
on the one hand that it "is still not Grapes" and, on the other, that some time ago the
Resveratrex product was colored with FD&C Red #40, FD&C Yellow #6 and FD&C
Blue #2.

      d.     There is no factual basis for Mr. Lessman's and Procaps' contention that
Carmine impairs the quality of the NATURE'S CODE products offered by QVC, or
that, in the past, FD&C Red #40, FD&C Yellow #6 and FD&C Blue #2 were
detrimental to quality or safety. In fact Natural Carmine and FD&C Red #40, FD&C
Yellow #6 and FD&C Blue #2 have been in use throughout the food industry for
many years and have no harmful or negative effects.

e.     Lessman and Procaps falsely accuse QVC of deceptively marketing their NATURE'S CODE Resveratrex as having grape content, disputing the fact there is a substantial grape base to NATURE'S CODE Resveratrex; and they contend that grape extract and Muscadine grape seed extract, which are in fact used in NATURE'S CODE Resveratrex, are a "secondary source of Resveratrol" in the product, adding that: "I doubt if those materials contribute much."

f.     In fact, by volume, there is almost as much grape extract and Muscadine grape seed extract in the Resveratrex tablet as there is Polygonum Cuspidatum, the principal source of Resveratrol in Resveratrex (and evidently the sole source or resveratrol in defendants competing product). NATURE'S CODE Resveratrex includes grape extract and Muscadine grape seed extract in addition to Polygonum Cuspidatum because the grape extracts contain additional beneficial compounds not found in Polygonum Cuspidatum alone.

g.     Again falsely challenging the fact there is a substantial grape base to NATURE'S CODE Resveratrex, Mr. Lessman represents that the active ingredient "Healthy Heart Blend" in Reveratrex is "an all but meaningless list of seven different botanicals NONE of which states a standardization of any kind."

h..     In fact NATURE'S CODE "Healthy Heart Blend" consists of grape skin extract standardized for polyphenols and anthocyanins, pomegranate extract standardized for 40% ellagic acid, quercitin, grape leaf extract 4:1, olive leaf extract 4:1, lemon extract standardized for 45% total bioflavonoids and prune powder, and the presence of each of these ingredients, including grape skins and polygonum, is supported by substantial research and defined Oxygen Radical Absorbance Capacity (ORAC) scores. The presence of polyphenols, anthocyanins, ellagic acid, bioflavonoids, etc. are all additional compounds not found in Polygonum Cuspidatum and all add additional benefits over resveratrol from polygonum cuspidatum alone, and there is no basis for defendants' contention otherwise.

i.     In further disparaging Resveratrex as a "large, red artificially-colored tablet" Mr. Lessman makes a false comparison between tablets and capsules.

j.     In fact, there is no scientific data that capsules are superior to tablets (and laying aside that Carmine is a natural coloring agent), Mr. Lessman incorrectly leads his audience to believe that capsules are superior by failing to provide the relevant information to understand the distinction; by failing to mention the fact that part of the very benefit of tablets is that the active ingredients are delivered in a matrix of other products (principally calcium in the Resveratrex product) that are needed in order to make a tablet.

k.     In disparaging the NATURE'S CODE Resveratrex product, Mr. Lessman nowhere discloses that, upon information and belief, his own gelatin capsules are made from hoofs and hides of cattle and pigs, and there is no basis to say that

processed hoofs and hides are more natural or beneficial to a person than calcium, an essential mineral in the human diet.

l.    Although Mr. Lessman and Procaps have no grape content in their own resveretrol product, but nonetheless use on the product label a prominent depiction of a bottle of wine, glass of wine, and multiple species of grapes (covering half of the principal display panel on the Resveratrol-100 label), Mr. Lessman and Procaps falsely assert that the "principal source" of Resveratrex Drink "is NOT of the 'vine'".

m.    In fact, approximately 20% of the NATURE'S CODE Resveratrex drink is made up of grape juice concentrate, grape skin and grape seed, all of which are "of the vine."

n.    Mr. Lessman falsely asserts that the NATURE'S CODE Resveratrex products and his own Resveratrol-100 have comparable proportions of ingredients "associated with red wine".

o.    In fact, despite the prominent depiction of wine and grapes on the Procaps product, Resveratrol-100 has no grape-derived ingredients at all, whereas NATURE'S CODE Resveratrex tablets and drink contain significant portions of ingredients derived from grapes.

p.    Mr. Lessman and Procaps falsely mislead their audience to believe that the NATURE'S CODE Reveratrex drink is artificially sweetened and thus of inferior quality to their own, including by representing that 4 grams of sugar in the Resveratrex Drink is from a "mystery source" and (to arouse suspicion) "must be hiding somewhere and you'll never guess where".

q.    In fact, the only sugar content in the NATURE'S CODE Reveratrex drink comes from the natural red and white grape juice in the drink. No artificial sweeteners are added, and there is nothing hidden in or suspicious about the product.

r.    Mr. Lessman and Procaps falsely mislead their audience to believe that the NATURE'S CODE Reveratrex drink is artificially sweetened and thus of inferior quality to their own, by representing that "Grape Concentrate is apparently not an anti-oxidant rich standardized extract of Grapes for Heart Health, but some kind of sugar-rich concentrate from grapes that sweetens the drink".

s.    In fact, the grape juice concentrate in the NATURE'S CODE Reveratrex drink is a pure juice with some of the water removed. It is rich in antioxidants and nutrients and other healthful compounds that are not found in Polygonum Cuspidatum alone.

t.    To further mislead his audience that the NATURE'S CODE Reveratrex drink is artificially sweetened and thus of inferior quality to defendants' own

resveratrol capsules, Mr. Lessman and Procaps assert that "Sugar is the dominant ingredient in the Healthy Heart Blend" of the Resveratrex Drink.

   u.   In fact, the dominant ingredients in the NATURE'S CODE Reveratrex drink are natural grape juice and resveratrol, supported by additional polyphenols, anthocyanins, bioflavonoids and other elements from the Healthy Heart Blend of anti-oxidants, and there is nothing harmful regarding the natural grape juice used in the product.

44.   The unambiguous message and necessary implication conveyed by the defendants' representations is that the NATURE'S CODE Resveratrex product offered by QVC is artificial, bloated with valueless ingredients and/or is of poor quality and inferior to defendants' competing product.

45.   Defendants' foregoing representations are materially false and misleading.

46.   Upon information and belief, said representations of defendants are unsubstantiated, and defendants do not possess scientific evidence to support the above representations challenging the quality and safety of QVC's products.

47.   Consistent with the unambiguous message and necessary implication conveyed by defendants' misrepresentations as aforesaid, and as set forth more fully below, numerous consumers exposed to defendants' misrepresentations have concluded that QVC's Resveratrex product is indeed a of poor quality and greatly inferior to defendants' competing product.

48.   While appearing on-air on HSN, defendant Lessman further directed viewers to read the above false statements posted on his blog, and HSN continues to make available videos of Mr. Lessman's on-air presentations on its web-site at hsn.com.

49.   Defendants' false and misleading statements as aforesaid have directly injured QVC and caused lost sales.

50.     Among the comments of consumers published by defendants on their website in response to defendants' false and misleading representations regarding QVC's Resveratrex products are the following:

a.   "I saw early this morning [QVC's] presentation and watched it just to see how they would sell it. When I heard and saw the 'tablet' my sensitive stomach felt queezy (sic) for those people who don't realize there are binders in there that are not needed, you educated us on that!

b.   "QVC has so gone down the wrong path, and now I will wonder about a lot of the products they offer. This will come to no good for them, as their credibility has taken a severe nosedive."

c.   "While I certainly understand your previous hesitation to discuss the inferiority of QVC vitamins/supplements, I am so glad that you are defending your own products - and in the process, speaking your mind (and the truth). ... Not only is it scientifically sound, but you have proven beyond a doubt that you are on top of the latest research....so what you offer is the best possible product available. QVC can't even come close (as you've shown through your blogs regarding the subject)."

d.   "'...but when it comes to their Resveratrol products, the Q might better stand for Questionable'. ... well said!"

e.   "QVC Natures Code is a joke. Sometimes I'll watch a few minutes of one of their shows just for a good laugh. Andrew I applaud you for exposing Natures Code for the joke that it is. As always, you have given us the truth, the whole truth, and nothing but the truth. "

f.   "Join us and take superior products that are made by someone who is passionate about and committed to what he does. ... Or continue to support others who choose instead, to aggressively market poor products, which they KNOW are cheaper and clearly not likely to contribute (sic) to better health! ... Andrew..Please continue to ROCK ON and know that you are loved and appreciated by your loyal customers who continue to stand behind you while others aggressively try (unsuccessfully) compete with your QUALITY and innovation! ... they simply can't! Certainly not in THIS case!"

g.   "this is simply a demonstration of the pure facts. It isn't putting down another brand. What he is showing can be found on the product labels - he's simply saving us the hassle of finding the info on our own (he's already gathered it and put it into chart form - making the comparison easy for the customer)."

h.   "Your loyal HSN customers LOVE you and are very angry & disappointed at QVC for going so low in trying to make vitamin and supplement sales. The truth shall prevail ultimately and your products are so much superior to

Nature's Code that there is no doubt in my mind that you will come out ahead after all this dirty warfare is over."

51.     In publishing customers' testimonials on their website and failing to correct their customers' mistaken conclusions regarding the quality of QVC's and QH's products and the integrity of QVC, and in continuing to allow such comments to remain in print without correction, defendants Lessman and Procaps have adopted as their own these false, disparaging and injurious comments.

52.     Defendants' foregoing representations are materially false and misleading.

53.     Upon information and belief, Lessman's and Procaps' false and misleading comments directed at QVC and its products were made maliciously and with a deliberate intent to mislead consumers and cause injury to QVC.

54.     Contrary to applicable law, Lessman and Procaps fail to disclose on their website that they are sponsored by and affiliated with HSN, QVC's direct competitor.

55.     Upon information and belief, defendants' acts complained of herein have been willful and malicious, and intended to injure and trade upon the reputation of Plaintiff and its products and thereby and cause harm to plaintiffs.

56.     Upon information and belief, defendants' acts complained of herein have been willful and malicious, and intended to injure and trade upon the reputation of plaintiffs and their products and thereby and cause harm to plaintiffs.

## FIRST CAUSE OF ACTION
[False Advertising Under 15 U.S.C. § 1125(a)]

57.     Plaintiffs reallege and incorporates by reference Paragraphs 1 through 56 as though fully set forth herein.

58.     Defendants' false and misleading advertising and promotional statements are material to consumer purchasing decisions.

59.    Defendants' conduct as aforesaid constitutes use of false designations of origin and false and misleading descriptions or representations that are likely to cause confusion, to cause mistake or to mislead in violation of 15 U.S.C. §1125(a).

60.    Defendants' conduct as aforesaid has caused great and irreparable injury to plaintiffs, and unless such conduct is enjoined, it will continue and plaintiffs will continue to suffer great and irreparable injury.

61.    Plaintiffs have no adequate remedy at law.

## SECOND CAUSE OF ACTION
### [Common Law False Advertising]

62.    Plaintiffs reallege and incorporates by reference Paragraphs 1 through 61 as though fully set forth herein.

63.    Defendants' false and misleading advertising and promotional statements are material to consumer purchasing decisions and have caused and are likely to continue to cause consumer confusion.

64.    The foregoing conduct of the defendants constitutes false advertising in violation of the common law of the State of Delaware.

65.    Defendants' conduct as aforesaid has caused great and irreparable injury to plaintiffs, and unless such conduct is enjoined, it will continue and plaintiffs will continue to suffer great and irreparable injury.

66.    Plaintiffs have no adequate remedy at law.

## THIRD CAUSE OF ACTION
### [Violation of Delaware Consumer Fraud Act, 6 Del. C. § 2531 et seq.]

67.    Plaintiffs reallege and incorporates by reference Paragraphs 1 through 66 as though fully set forth herein.

68.     The State of Delaware has an important interest in ensuring that persons and entities doing business with Delaware residents comply with Delaware law and the false and misleading statements of defendants implicate the public interest.

69.     Defendants' false and misleading advertising and promotional statements are material to consumer purchasing decisions and have caused and are likely to continue to cause consumer confusion.

70.     The conduct complained of herein constitutes unlawful consumer fraud deceptive trade practices, in violation of Delaware Consumer Fraud Act, 6 Del. C. § 2513.

71.     Defendants' conduct as aforesaid has caused great and irreparable injury to plaintiffs, and unless such conduct is enjoined, it will continue and plaintiffs will continue to suffer great and irreparable injury.

72.     Plaintiffs have no adequate remedy at law.

### FOURTH CAUSE OF ACTION
[Violation of Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2532]

73.     Plaintiffs reallege and incorporates by reference Paragraphs 1 through 72 as though fully set forth herein.

74.     The State of Delaware has an important interest in ensuring that persons and entities doing business with Delaware residents comply with Delaware law and the false and misleading statements of defendants implicate the public interest.

75.     Defendants' false and misleading advertising and promotional statements are material to consumer purchasing decisions and have caused and are likely to continue to cause consumer confusion

76.     Upon information and belief, defendants have knowingly disparaged plaintiffs' goods, services, and business by false and/or misleading representation of fact, and knowingly

created a likelihood of confusion and/or misunderstanding among plaintiffs' and defendants'

consumers.

77.     The conduct complained of herein constitutes deceptive trade practices, in

violation of the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2532.

78.     Defendants' conduct as aforesaid has caused great and irreparable injury to

plaintiff, and unless such conduct is enjoined, it will continue and plaintiffs will continue to

suffer great and irreparable injury.

79.     Plaintiffs have no adequate remedy at law.

**FIFTH CAUSE OF ACTION**
[Unfair Competition Under Delaware Common Law]

80.     Plaintiffs reallege and incorporates by reference each of the allegations contained

in Paragraphs 1 through 79 of this Complaint as though fully set forth herein.

81.     The foregoing conduct of defendants constitutes unfair competition with under the

common law of the State of Delaware.

82.     Defendants' conduct as aforesaid has caused great and irreparable injury to

plaintiffs, and unless such conduct is enjoined, it will continue and plaintiffs will continue to

suffer great and irreparable injury.

83.     Plaintiffs have no adequate remedy at law.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), plaintiffs demand a trial by jury as to

all issues so triable in this action.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants as follows:

1.     Preliminarily and permanently enjoining defendants, their agents, representatives,

employees, assigns and suppliers, and all persons acting in concert or privity with them, from

making false or misleading statements concerning Plaintiff's or its products or from competing

unfairly with plaintiffs;

      2.     Directing that defendants engage in corrective advertising appropriate to remedy

the injury caused to plaintiffs;

      3.     Awarding plaintiffs their damages and defendants profits derived by reason of the

unlawful acts complained of herein as provided by law;

      4.     Awarding plaintiffs treble damages as provided by law;

      5.     Awarding plaintiffs exemplary damages as provided by law; and

      6.     Awarding plaintiffs their reasonable attorney fees, prejudgment interest, and costs

of this action as provided by law.

Dated: February 5, 2010                        **CROSS & SIMON, LLC**

                                              _Sean T. O'Kelly_

                          Joseph Grey (No. 2358)
                          Sean T. O'Kelly (No. 4349)
                          913 North Market Street, 11th Floor
                          P.O. Box 1380
                          Wilmington, DE  19899-1380
                          (302) 777-4200
                          (302) 777-4224 (fax)
                          jgrey@crosslaw.com
                          sokelly@crosslaw.com
                          _Attorneys for Plaintiff_

Of Counsel

Jonathan E. Moskin
Britton Payne
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016

# EXHIBIT B

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                          - - -

 4
      QVC, INC. and QHEALTH,      :   CIVIL ACTION
 5    INC.,                       :
                                  :
 6                  Plaintiffs,   :
                                  :
 7          vs.                   :
                                  :
 8    YOUR VITAMINS, INC. d/b/a   :
      PROCAPS LABORATORIES and    :
 9    ANDREW LESSMAN,             :
                                  :
10                  Defendants.   :   NO. 10-00094 (SLR)

11
                            - - -
12
                              Wilmington, Delaware
13                            Wednesday, February 24, 2010
                              4:05 o'clock, p.m.
14                            ***Telephone conference

15                          - - -

16    BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J.

17                          - - -

18

19    APPEARANCES:

20
              CROSS & SIMON, LLC
21            BY:  JOSEPH GREY, ESQ.

22                      -and-

23

24                              Valerie J. Gunning
                                Official Court Reporter
25
```

2

```
 1    APPEARANCES (Continued):

 2

 3              FOLEY & LARDER LLP
                BY:  JONATHAN E. MOSKIN, ESQ. and
 4                   BRITTON PAYNE, ESQ.
                     (New York, New York)
 5

 6              Counsel for Plaintiffs

 7

 8
                MORRIS, NICHOLS, ARSHT & TUNNELL
 9              BY:  JACK B. BLUMENFELD, ESQ.

10
                         -and-
11

12              SIDLEY AUSTIN LLP
                BY:  JONATHAN F. COHN, ESQ. and
13                   JAMES D. ARDEN, ESQ.
                     (New York, New York)
14

15              Counsel for Defendants

16                       - - -

17

18

19

20

21

22

23

24

25
```

3

1                     P R O C E E D I N G S

2

3              (REPORTER'S NOTE:  The following telephone

4     conference was held in chambers, beginning at 4:05 p.m.)

5

6              THE COURT:  Good afternoon, counsel.  This is

7     Judge Robinson, and Valerie is here as our Court Reporter.

8              I'm hopeful that you all have spoken with each

9     other in terms of how best to go forward with the pending

10     motions for temporary restraining order and preliminary

11     injunction, but, in any event, I will let plaintiffs fill me

12     in on the status of the case and their suggestions.

13              MR. GREY:  Good afternoon, your Honor.  This is

14     Joseph Grey, from Cross & Simon.  I'm local counsel for the

15     plaintiff.  On the phone with us, are Jonathan Moskin and

16     Britton Payne, both of the Foley & Lardner firm.  We filed

17     motions to have both of them admitted pro hac vice and

18     they're pending.  I would ask, with your Honor's permission,

19     I'd like Mr. Moskin to speak for the plaintiffs.

20              THE COURT:  That's fine.

21              MR. GREY:  Thank you.

22              MR. MOSKIN:  And thank you, your honor.  This is

23     Jonathan Moskin.

24              I don't know to what extent your Honor has had

25     an opportunity to review all the papers filed.  As you know,

4

1   we commenced this suit on February 5th, which is just more

2   than two weeks after QVC discovered that the defendants

3   were -- they launched something of an attack on them and

4   were saying numerous disparaging things about their

5   products, including that one of the dietary supplements was

6   a carcinogen, that it was unhealthy, that the products are

7   inferior, poor quality, that some of the ingredients of

8   these vitamins lack efficacy, including supposedly

9   meaningless arrays of herbal extracts included, all of which

10   we dispute.  That the products are falsely labeled to hide

11   sugar content.  That they have no great content and so

12   forth.  All of these are detailed in our papers.

13          Given the nature of the allegations that

14   defendants have made, it's not entirely surprising that

15   consumer reaction has been what it has been and also

16   detailed, to some extent, in our papers submitted to the

17   Court, includes comments by consumers that QVC's conduct

18   is criminal, that it is selling unhealthy products, that

19   it should be boycotted.  Consumers saying they are refusing

20   to purchase anymore products from QVC are returning

21   products.

22          There have been some discussions between

23   counsel.  Contrary to the very short response submitted

24   electronically by the defendants, the day we filed the

25   complaint, we served a copy of the complaint by Federal

1    Express on the defendant, who therefore had it on February

2    6th.

3            My letter accompanying that complaint requested

4    that he have his lawyers contact me.  They did, on

5    February 12th.  Even before that, however, the plaintiff had

6    posted a blog on his website, at 8:30 in the morning on

7    February 11th, saying that his lawyers were about to respond

8    and file papers.  On the 12th, when we spoke, it was

9    apparent that defendants' counsel had already reviewed the

10   preliminary injunction papers.

11           I asked him in that call if they would stop

12   publishing the defamatory and, we contend, false statements

13   that the defendants are accused of publishing, which they

14   refused to do.  I asked -- they mentioned to me that they

15   contemplated filing a counterclaim of some sort.  I asked

16   them to explain or tell me what the counterclaim concerned.

17   They declined to tell me that.  They did offer during that

18   call to discuss a schedule, but I've yet to hear a specific

19   response from them to the schedule, which I will detail in a

20   moment, that I proposed to them last week.

21           We did speak, opposing counsel and I, again

22   spoke on Monday.  Again, they declined to tell me what their

23   counterclaim might be, and we were not able to agree on the

24   terms of a schedule for going forward.

25           As I explained, and I understand that this is a

6

1    bit of a complicating factor in creating a schedule -- as I

2    explained to opposing counsel, this is something of a

3    variable, and I offered two variations of how we might

4    proceed.  One is if they would agree that their client would

5    cease publishing the materials at issue for the time being,

6    we could go forward on a more relaxed schedule with urgency,

7    perhaps, but not the same kind of urgency that I think is

8    necessary under the circumstances.  But lacking that -- such

9    an agreement, I suggested -- this was last week -- that they

10   provide an answer.  That would have been yesterday,

11   February 23rd, which would have been 17 days after they

12   received the complaint.

13          I then also proposed that they respond to

14   discovery, and they do have our discovery, initial discovery

15   requests, which were also served on Friday last week; that

16   they respond to that written discovery, including producing

17   documents either by March 5th, or, if need be, the week of

18   March 8th.  That the following week of March 15th, we

19   conduct any depositions that would be needed.

20          At this point, I can only -- I anticipate

21   certainly one deposition of the defendant, Andrew Lessman.

22   There may be additional depositions.  I'm not aware of those

23   yet.  And then, of course, we would schedule a hearing at

24   your Honor's earliest convenience.

25          But, again, if we can agree on a takedown

1    or a cessation of publication of the offending comments

2    and statements, we can proceed at a somewhat more relaxed

3    pace.

4              I can go on and explain the merits of the case,

5    if you'd like, but I take it that the principal terms of

6    this call would be to -- is for scheduling purposes.

7              I will add, just in conclusion, at this point

8    that if we cannot agree on a voluntary cessation of

9    publication of these materials, we would also like to

10   schedule a hearing, or more formal hearing for a TRO.  And,

11   again, if a TRO is granted, then we can amend a schedule for

12   completion of discovery.

13             THE COURT:  All right.  Thank you.

14             Let's hear from defendants' counsel as to how

15   we proceed, not necessarily anything in depth about the

16   merits.

17             MR. BLUMENFELD:  Your Honor, it's Jack

18   Blumenfeld.  I think Mr. Cohn is going to speak for the

19   defendants.

20             THE COURT:  All right.  Thank you.

21             MR. COHN:  Thanks, Jack.  And thank you, your

22   Honor.  I will be very, very brief because I'm well aware of

23   just how swamped your Honor and the Court have been

24   recently.

25             I will just cut to the chase.  This case does

1    not present any emergency of any kind and simply does not

2    warrant the expedition that plaintiffs are seeking from this

3    Court.  And I say that both because of how this case has

4    progressed so far and because of what this case is really

5    all about.

6              First, in terms of how this case has progressed,

7    the blogs in question have been public now for over a month.

8    QVC waited to file its complaint until February 5th, about

9    two weeks after the blogs were posted.  Even then, QVC did

10   not seek a P.I. or TRO, but, rather, waited four days before

11   filing those papers.  And even then, they did not serve us

12   with the P.I. and TRO papers.  They had served us with the

13   complaint, but they did not serve us with a P.I. and TRO

14   papers until the 17th, February 17th.

15             Two days after that, they served us on Friday,

16   at 5:53 p.m., with their blunderbuss discovery requests,

17   which I will discuss a little bit later.  But needless to

18   say, they have not moved anything close to expeditiously

19   over the past month, so I don't see why they're now asking

20   the Court to enter emergency relief.  But also it's

21   important for me to discuss what this case is really all

22   about at bottom.

23             At bottom, QVC is being a bully, and they're

24   upset that my client, Mr. Lessman, has refused to go work

25   for them.

1          Mr. Lessman used to work for them.  He left.

2     QVC wanted him back.  They negotiated recently and he said

3     no, after which QVC got unhappy and they started marketing a

4     hair, skin and nail product using the exact name of Mr.

5     Lessman's products.

6          In response to that, Mr. Lessman did not sue,

7     but, instead, took the high road and posted his blogs, in

8     which he explained that QVC's product is not his product,

9     and he further explained the deficiencies in QVC's products.

10    He explained how QVC uses a tremendous amount of artificial

11    ingredients and colors and additives and fillers.

12          He pointed out, for instance, that their hair,

13    skin and nail products is 99-percent additives, a fact which

14    plaintiffs have not contested in their complaint.  Indeed,

15    QVC sued over the blogs, but did not contest the main points

16    that Mr. Lessman made.  Namely, the artificial ingredients

17    and additives.  Instead, what QVC did in its complaint is

18    attack a fictional blog that Mr. Lessman did not write.  Mr.

19    Lessman did not say that QVC's products are carcinogenic,

20    and Mr. Lessman recognized that one of the natural

21    ingredients that QVC used was sugar.  He never said they

22    used artificial sweeteners.  They use a whole lot of other

23    artificial products, but they use natural sugar.  He used

24    the word "sugar," so I don't see why QVC is suggesting

25    otherwise.

1          Finally, QVC contends Mr. Lessman was comparing

2   tablets and capsules.  He cannot do that.  He prefers

3   capsules.  Nowhere in the blog did Mr. Lessman make that

4   comparison.

5          Once again, QVC is challenging a fictional blog.

6   The bottom line is this case is the pot calling the kettle

7   black.

8          QVC tried to deceive customers.  They're the

9   ones who stole Mr. Lessman's name.  They're the ones making

10   erroneous statements, like their product has the highest

11   nutrition natural level for hair skin and nails, points

12   we'll go into in our counterclaims.  They made myriad other

13   false statements, and they're also the ones who present a

14   spokesman as a doctor who talks to medical issues and they

15   say he has a medical degree, but he does not have an M.D.

16   He's a naturopath, but they present him as a doctor.

17          So we have these counterclaims and others we're

18   going to file on Monday, when our counterclaims are due, but

19   these are all the reasons why there's no reason for

20   plaintiff to be seeking expedition in this case.

21          THE COURT:  Well, unfortunately, these are facts

22   you know, and these are facts that might be apparent to you,

23   and these are facts that perhaps will be apparent to me at

24   some point, but that introduction didn't help me decide how

25   to go forward.

1          Generally, with papers like this, I don't sit on

2    my hands and wait for you all to work things out on your

3    own.  So do you have any suggestions as to what we actually

4    do to bring your facts to light?

5          MR. COHN:  Yes, your Honor.  We don't think that

6    there's a BASIS for discovery here in this case, and

7    certainly not the 38 interrogatories which plaintiffs are

8    seeking and 51 document requests.

9          Our opposition to their papers would be due on

10   March 8th, and we're happy to proceed on that schedule if

11   there is no discovery.  If there is discovery, we would

12   recommend there be more focused discovery and not the

13   enormous discovery that plaintiffs are seeking of the entire

14   case, and they're EVEN seeking discovery they could not get

15   on the merits case, like 38 interrogatories.

16         We'd recommend there be focused discovery, after

17   which QVC should file a brief incorporating their fruits of

18   discovery, and only after that would we file our brief.

19         QVC is recommending that we file the next brief,

20   but that strikes me as unfair because we would not be filing

21   any brief after they file a brief incorporating discovery.

22   We would never get a response to that brief.

23         So our recommendation is, if there's no

24   discovery, we file our brief on March 8th and they file a

25   reply.  If there is discovery, it be targeted discovery

1    after which QVC files a brief.  Then we get an opposition.

2    Then they get a reply.

3            THE COURT:  Well, let me ask certainly

4    plaintiffs' counsel first and then I will get back to

5    defendants' counsel.  I mean, I take it that in order to

6    carry the day, the plaintiff has to prove that the

7    statements made in the blog are incorrect.  Is that right?

8    I mean, I'm not sure -- which is information that's

9    certainly within your possession.  So I'm not sure what

10   discovery we're trying to pursue here in order to move

11   forward.

12           MR. MOSKIN:  Your Honor, this is Jonathan

13   Moskin.

14           And the real issue, which is not -- well, let me

15   just say, what the real issue is in most of these claims are

16   statements that -- well, the law provides that if a party

17   such as defendant makes unsubstantiated claims, the burden

18   is on them to demonstrate that there is a basis for those

19   claims.

20           Mr. Lessman, Dr. Lessman -- Mr. Lessman.  Excuse

21   me.  He's not a doctor.  Mr. Lessman states, accuses QVC of

22   using in its product a silica.  He acknowledges, if you read

23   between the lines, that he has no idea what the formulation

24   is for the silica, and yet he says it's no more capable of

25   being absorbed into the bloodstream than glass or sand.

1            He has the burden, then, to respond to

2    discovery, to tell us what research he is relying on to

3    support that contention.  He says that the -- there's a

4    blend of herbal extracts that's in this Resveratrex product

5    that QVC sells.  He says it's meaningless, this blend.

6            Again, if you read between the lines on his

7    blog, he's clear he does not know what's in it.  If he had

8    the basis to make the allegations that this was a

9    meaningless blend of products and ingredients, then he has

10   the burden to show the Court what is that basis.

11           Similarly, the allegation that is the most

12   startling of all, he says that the QVC products, the hair,

13   skin and nails product, includes a carcinogen.  Again, if he

14   has no basis to make that assertion, his assertion is false

15   and the Court need look no further than that.

16           So I could go on, but these are examples.

17           I will also mention, just by way of -- well,

18   maybe I won't.  I can address counsel's comments on the

19   merits of the case and the counterclaim that the

20   allegations, whatever reason they're unwilling to share them

21   with me until he just shared them with the Court.  But I

22   will just note that we disagree with those statements and

23   think -- and that's not what the case is about at all.

24           So we would like, still like to have a -- have

25   these comments, a cessation of publication of these

1    comments, which are available not only on the client's own

2    blog, but if you do a Google search, you find -- you are led

3    to the statements on the blog and on U-Tube, where he has

4    posted the same comments.

5          And the comments continued, frankly.  It wasn't

6    just a month ago.  The comments continued.  He posted videos

7    until the day we filed the complaint on February 5th and, of

8    course, we then lost that week mainly because of the

9    snowstorm the ensuing week.  So I don't think there really

10   is any genuine basis to say there has been a lack of

11   expedition by QVC.

12         THE COURT:  All right.  This is what I'm going

13   to have you do.  I'm going to have each of you file with me

14   by Monday, end of the day Monday, what you propose to be

15   appropriate focused discovery to get this on the fast track,

16   and included in that, I would appreciate -- well, so I'd

17   like to see that by Monday.  What I will do is, I will take

18   those plans and I will decide what is appropriate and

19   focused and issue an order consistent with my decisions as

20   to that.  So I think that's our first step.

21         If, for some reason, you all can't appear when I

22   request you to appear, then we'll change the date, but I

23   think I need to see the discovery before I decide how to go

24   forward.

25         MR. MOSKIN:  Again, this is Mr. Moskin.

1            And we will then, until Monday, hold in abeyance

2     the discussion of emergency relief or scheduling the

3     preliminary injunction?

4            THE COURT:  Yes.  I mean, I am going to move

5     this case forward expeditiously.  Depending on the

6     discovery, I believe that looking at the discovery that each

7     of you would deign to take in furtherance of resolving the

8     pending motions, I will have a better idea of how

9     expeditious this whole process has to be.  But I am assuming

10    that we're not going to be relaxed about it because the

11    blogs are still up.  But that does not mean I am going to go

12    quite as quickly as plaintiff perhaps wants.  But I want to

13    see the discovery first.

14           MR. MOSKIN:  I understand.

15           If I can make one final request.  I hope I'm not

16    pressing my luck.  This is Mr. Moskin again.

17           Just so I can understand, we can understand the

18    discovery in context, would it be possible to get the

19    response to the complaint, the answer, if there are going to

20    be counterclaims sooner than Monday?

21           THE COURT:  Well, when is the answer due?  On

22    Monday?

23           MR. MOSKIN:  On Monday.

24           THE COURT:  Do the discovery plans by Wednesday.

25    I'm sorry.  How is that?

1          MR. MOSKIN:  Well, I would prefer that we submit

2     the discovery on Monday, but that's all right.  If we have

3     to do it Wednesday, that's fine.

4          THE COURT:  All right.  And I will get something

5     out before the end of next week.  All right?

6          MR. MOSKIN:  Thank you very much, your Honor.

7          MR. COHN:  Thank you, your Honor.

8          THE COURT:  Thank you.

9          (Telephone conference concluded at 4:25 p.m.)

10                         -   -   -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT C

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

| | |
|---|---|
| QVC, INC. and QHEALTH, INC. | ) |
| _Plaintiff_ | ) |
| v. | ) |
| YOUR VITAMINS, INC and ANDREW LESSMAN | ) |
| | ) |
| _Defendant_ | ) |

Civil Action No.   10-094 (SLR)

_(If the action is pending in another district, state where:_

District of Delaware              )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Schedule A hereto.

| Place:  Foley & Lardner LLP, 100 North Tampa Street, Tampa, FL 33601 | Date and Time: <br><br> 03/15/2010 10:00 am |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  __02/26/2010__

_CLERK OF COURT_

OR

_____            _____
_Signature of Clerk or Deputy Clerk_                    _Attorney's signature_

The name, address, e-mail, and telephone number of the attorney representing _(name of party)_  QVC, INC, QHEALTH, INC.
_____, who issues or requests this subpoena, are:

Jonathan Moskin
Foley & Lardner LLP, 90 Park Avenue, New York, NY 10016 212-338-3572

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   10-094 (SLR)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____  on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                              *Server's signature*

                                        _____
                                              *Printed name and title*

                                        _____
                                              *Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| QVC, INC. and QHEALTH, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 10-094 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| YOUR VITAMINS, INC. d/b/a PROCAPS | ) | |
| LABORATORIES and ANDREW | ) | |
| LESSMAN, | ) | |
| | ) | |
| Defendants. | ) | |

**SCHEDULE A TO SUBPOENA**

**INSTRUCTIONS AND DEFINITIONS**

1.      Except as otherwise agreed in writing by QVC, production of the documents sought in these Requests shall be at the offices of Foley & Lardner LLP, 100 North Tampa Street, Tampa FL 33601.

2.      Respond to each Request in full.  If you cannot do so, respond to the extent possible, explaining why you cannot respond completely and stating any knowledge, information, or belief you have concerning the nonresponsive portion of the Request.

3.      The term "person" means a natural person, individual, partnership, firm, corporation, or any other kind of business or legal entity, or the agents or employees of a natural person, individual, partnership, firm, corporation, or any other kind of business or legal entity.

4.    The terms "Plaintiff" and "QVC" refer to Plaintiffs QVC, Inc. and/or QHealth, Inc.

5.    The terms "Defendants" "Lessman" or "ProCaps" refer to Defendants Andrew Lessman or, as appropriate in context, Your Vitamins, Inc. d/b/a ProCaps, Inc., and (i) all of its directors, officers, employees, agents, representatives, accountants, investigators, consultants, attorneys, and predecessors or successors in interest, as well as any parent, subsidiary, company owned by ProCaps, or affiliated entity in existence during the period of time relevant to these Requests; (ii) any other person or entity acting on ProCaps' behalf or upon whose behalf ProCaps has acted; or (iii) any other person or entity otherwise subject to ProCaps' control, or to whose control ProCaps is subject — in whole or in part.

6.    The term HSN refers to HSN LP, d/b/a Home Shopping Network, and (i) all of its directors, officers, employees, agents, representatives, accountants, investigators, consultants, attorneys, and predecessors or successors in interest, as well as any parent, subsidiary, company owned by HSN, or affiliated entity in existence during the period of time relevant to these Requests; (ii) any other person or entity acting on HSN's behalf or upon whose behalf HSN has acted; or (iii) any other person or entity otherwise subject to HSN's control, or to whose control HSN is subject — in whole or in part.

7.    The term "Lessman QVC Blog Entries" shall refer to the postings to the website <http://andrew.procapslabs.com/> referred to in the Complaint and Motion for Preliminary Injunction that discuss the QVC products NATURE'S CODE Hair, Skin &

2

Nails and NATURE'S CODE Resveratrex, including but not limited to the following entries:

a) February 5, 2010, 10:47: *Question: When is a "Doctor" not really a Doctor? Answer: When they appear with Nature's Code vitamins on QVC*: Posted by Andrew Lessman

b) February 4, 2010, 12:21: *A Video Discussion of QVC's Resveratrol Products.*: Posted by Andrew Lessman

c) February 3, 2010, 17:35: *A Video Discussion of QVC's Hair, Skin & Nails Product*: Posted by Andrew Lessman

d) January 22, 2010, 10:38: *A Few Words on Resveratrol and QVC's Colorful and Sweet Versions*: Posted by Andrew Lessman

e) January 20, 2010, 11:22: *QVC's Hair Skin and Nails...Over 99% Additives!*: Posted by Andrew Lessman

f) January 19, 2010, 07:30: *A Quick Follow-up on QVC's Hair Skin and Nails*: Posted by Andrew Lessman

g) January 14, 2010, 12:36: *QVCs Hair Skin and Nails isn't Healthy...it is just sleazy and deceptive!*: Posted by Andrew Lessman

    8.    The term "document" is given the broadest scope and meaning permitted under the Federal Rules of Civil Procedure. The term includes information that is fixed in any tangible medium whatsoever, and includes — by way of illustration only and not by way of limitation — the following: e-mail or other computer or electronic information; notes; correspondence; communications of any kind; facsimiles; telegrams; memoranda; notebooks; summaries or records of personal conversations; diaries; routing slips or memoranda; reports; publications; photograph; minutes or records of meetings; transcripts of oral testimony or statements; reports and summaries of interviews; reports or summaries of investigations; agreements and contracts, including all modifications or revisions thereof; reports or summaries of negotiations; court papers; brochures;

3

pamphlets; press releases; drafts of, revisions to, or translations of any document; tape recordings; records; and dictation tapes. For purposes of these Requests, any document bearing marks on any sheet or side of the document, such as stamped indicia, marginalia, or any comment or notation not part of the original text is deemed to be a separate document.

9.    The terms "related to," "relating to" and "relate to," "refer to," "concern," "concerning," "regarding," and "referring" mean constituting, comprising, describing, explaining, summarizing, being logically connected to, being chronologically connected to, or mentioning, whether directly or indirectly.

10.    The term "identify":

(a)    when used with respect to a person, means to state the person's full name, the present or last known address, and the present or last known place of employment;

(b)    when used with respect to an event or activity, means to state the date, names of participants, and nature of the activity or event;

(c)    when used with respect to a document, means to state or describe the type of document; the general subject matter of the document; the date of the document; the authors, addressees and recipients of the document; and the present custodian of the document; and/or

(d)    when used with respect to things other than documents means to state a description of the thing requested.

11.    In construing these Requests, the plural shall include the singular, the singular shall include the plural, and a masculine, feminine, or neutral term shall include all other genders. The words "and" and "or" mean "and/or" and should be read both ways so as to encompass both constructions and call for answers to be provided to both constructions. The word "each" includes the word "every," and the word "every"

NYC_766518.1

includes the word "each." The word "any" shall be understood to include and encompass "all," and "all" should be interpreted to include and encompass "any."

12.    The term "Complaint" shall refer to the Complaint filed by QVC on February 5, 2010, including any amendments thereto, in connection with this lawsuit.

13.    If any document that is responsive to these Requests is known to exist but cannot be produced, that document is to be specifically identified as precisely as possible and the reasons for the inability to produce the document stated.

14.    As required by Rule 26(b)(5) of the Federal Rules of Civil Procedure, with respect to any information you assert to be protected or privileged, you must expressly identify the nature of the privilege asserted, indicate the factual basis for the privilege, and describe the nature and the content of the allegedly-privileged information in sufficient detail to enable others to assess the applicability of the asserted privilege.

15.    In the event that a document that is responsive to these Requests has been destroyed, the response hereto shall identify: the preparer of the document; its addresser (if different), addressee, and each recipient thereof; each person to whom it was distributed or shown; the date it was prepared; the date it was transmitted (if different); the date it was received; a description of its contents and subject matter; the date of its destruction; the reason(s) for its destruction; the name, title and address of the person destroying the document; and a description of efforts to locate the document and copies of it.

16.     All electronically stored information within the meaning of Federal Rule of Civil Procedure 34 shall be produced as .TIFF images with a Concordance loadfile, and shall be in a searchable format (e.g., OCR).

## REQUESTS FOR PRODUCTION

1.     All documents regarding the relationship between Defendants and HSN concerning the promotion or sale of Defendants' Resveratrol and Healthy Hair Skin & Nails products, including but not limited to contracts, appearance requirements, subject matter limitations, indemnity agreements, and/or correspondence regarding Defendants' appearances on HSN.

2.     All documents concerning Defendants' promotion on HSN on or about January 23 and 24, 2010 of the subject PROCAPS Resveratrol and Healthy Hair Skin & Nails products, or concerning QVC, QHealth or NATURE'S CODE products, including without limitation memoranda, correspondence, emails, instant messages and the like.

3.     All scripts, outlines, screenplays, drafts thereof or documents concerning the preparation of Defendants' appearances on HSN on or about January 23 and 24, 2010.

4.     All documents setting forth or concerning any research, tests, assays, evaluations conducted by or on behalf of HSN or Defendants or of which HSN is aware regarding any NATURE'S CODE nutritional supplements, including without limitation the NATURE'S CODE Resveratrex and NATURE'S CODE Hair, Skin & Nails products.

5.     All documents setting forth or concerning any research, tests, assays, evaluations conducted by or on behalf of HSN or Defendants or of which HSN is aware comparing the contents and/or quality of the NATURE'S CODE Resveratrex and/or Hair,

6

Skin & Nails products with the contents and/or quality of Defendants' PROCAPS Resveratrol and/or Healthy Hair Skin & Nails products.

6.    All documents setting forth or concerning any claims made by Defendants of which HSN is aware regarding the contents or quality of NATURE'S CODE nutritional supplements, including without limitation the NATURE'S CODE Resveratrex and NATURE'S CODE Hair, Skin & Nails products, including without limitation any review of or comment upon such claims by HSN.

7.    All documents of which HSN is aware concerning the Lessman QVC Blog Entries or the creation thereof or reference thereto on HSN, including without limitation drafts thereof reviewed or commented upon by HSN, research or other materials exchanged between HSN and Defendants in creating the same, communications and memoranda commenting upon or regarding the same and the like.

8.    All documents concerning any comments received by HSN referring to or concerning QVC's NATURE'S CODE products from January 1, 2010 to date, including without limitation emails, blog postings, mail or telephone calls, together with any responses thereto by Defendants.

9.    All documents describing or referring to activity on any website operated by or for HSN ("HSN Website") concerning the Lessman QVC Blog Entries or QVC's NATURE'S CODE products, following Defendants' appearance on HSN on January 23 and 24, 2010, including but not limited to printouts of all such information, metrics on daily visits to any such HSN Website, account information of users who posted, email correspondence, private messages, written messages delivered by mail or otherwise.

NYC_766518.1

10.   Documents sufficient to identify all statements of which HSN is aware made by Defendants or HSN, directly or indirectly, in any media outlet, concerning QVC's NATURE'S CODE Hair, Skin & Nails and/or Resveratrex products, including but not limited to television or print advertisements or commentary, online advertisements or commentary, and online keyword advertising purchases.

11.   Samples of all advertising or marketing materials of which HSN is aware for Defendants' Healthy Hair Skin & Nails and Resveratrol products, including but not limited to copies of television or print advertisements, promotional videos, television appearances, infomercials, online banner ads, and sponsored links, and drafts or revisions thereof, used or unused.

12.   Documents sufficient to identify the sales on HSN of Defendants' Healthy Hair Skin & Nails and Resveratrol products from January 1, 2005 to date.

13.   All documents exchanged between HSN and Lessman concerning the product "Sensa" or any competing products made or sold by Defendants.


Dated: February 26, 2010


Respectfully submitted,

By:   s/Joseph Grey
      Joseph Grey
      Cross & Simon, LLC
      913 North Market Street
      Eleventh Floor
      P.O. Box 1380
      Wilmington, DE  19899-1380
      Telephone: (302) 777-4200

8

Facsimile: (302) 777-4224 (fax)
Email: jgrey@crosslaw.com

and

Jonathan E. Moskin
Britton Payne
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-3229
Email: jmoskin@foley.com

Attorneys for Plaintiffs

9

# EXHIBIT D



**Akerman**Senterfitt
ATTORNEYS AT LAW

Dallas
Denver
Fort Lauderdale
Jacksonville
Las Vegas
Los Angeles
Madison
Miami
New York
Orlando
Tallahassee
Tampa
Tysons Corner
Washington, DC
West Palm Beach

SunTrust Financial Centre, Suite 1700
401 E. Jackson Street
Tampa, Florida 33602-5250

www.akerman.com

813 223 7333 *tel*    813 223 2837 *fax*

March 12, 2010

**VIA FACSIMILE**

Jonathan Moskin, Esquire
Foley & Lardner LLP
90 Park Avenue
New York, NY  10016

Re:   QVC, Inc. and QHealth, Inc. v. Your Vitamins, Inc. and Andrew Lessman –
Subpoena served on HSN, LP
Our Matter No. 236592

Dear Mr. Moskin:

I am enclosing HSN's response to the Subpoena to Produce Documents in the referenced case. After you have had a chance to review the objections, we are happy to have a discussion with you to attempt to resolve as many of these issues as possible.

Sincerely,

AKERMAN SENTERFITT

L. Joseph Shaheen, Jr.

LJS/jbc

Enclosure

{TP577092;1}

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

QVC, INC., and QHEALTH, INC.,

                Plaintiffs,

                                          CURRENTLY PENDING IN
                                          DISTRICT OF DELAWARE
vs.                                       CASE NO.: 10-094(SLR)

YOUR VITAMINS, INC.
d/b/a PROCAPS LABORATORIES
and ANDREW LESSMAN,

                Defendants.
_____/

### HSN LP'S RESPONSE TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

HSN LP ("HSN"), by and through its undersigned counsel and responds to the subpoena served by Plaintiffs, QVC, Inc and QHEALTH, INC. (collectively "QVC") and states as follows:

HSN objects to the introductory language, instructions, and definitions contained in QVC's Subpoena to the extent that such language seeks to impose any duties or requirements upon Plaintiffs beyond those required by the Federal Rules of Civil Procedure. HSN answers these requests for production as required by Fed.R.Civ.P. 26, 34, and 45.

HSN responds to correspondingly numbered paragraphs of Schedule A to QVC's subpoena as follows:

1.      HSN objects to Request 1 on the grounds that the request as drafted is overly broad and imposes an undue and unreasonable burden on HSN to respond. HSN

further objects to this request on the grounds that it seeks production of documents which contain confidential, proprietary information and trade secrets. In addition, HSN objects to this request because it is so broad that it seeks production of documents which are protected by attorney client and work product privileges. Finally, HSN objects to this request because it is so broad that it seeks some information which is clearly irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.

      2.     HSN objects to Request 2 on the grounds that the request as drafted is overly broad and imposes an undue and unreasonable burden on HSN to respond. HSN further objects to this request on the grounds that it seeks production of documents which contain confidential proprietary information and trade secrets. In addition HSN objects to this request because it is so broad that it seeks production of documents which are protected by attorney client and work product privileges. Finally, HSN objects to this request because it is so broad that it seeks some information which is clearly irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.

      3.     HSN objects to Request 3 on the grounds that the request as drafted is overly broad and imposes an undue and unreasonable burden on HSN to respond. HSN further objects to this request on the grounds that it seeks production of documents which contain confidential proprietary information and trade secrets. In addition HSN objects to this request because it is so broad that it seeks production of documents which are protected by attorney client and work product privileges. Finally, HSN objects to this request because it is so broad that it seeks some information which is clearly irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.

4.      HSN does not have in its possession any such documents.

5.      HSN does not have in its possession any such documents.

6.      HSN objects to Request 6 on the grounds that the request as drafted is overly broad and imposes an undue and unreasonable burden on HSN to respond. HSN further objects to this request on the grounds that it seeks production of documents which contain confidential proprietary information and trade secrets. In addition HSN objects to this request because it is so broad that it seeks production of documents which are protected by attorney client and work product privileges. Finally, HSN objects to this request because it is so broad that it seeks some information which is clearly irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and with out waiving any such objections, HSN does not believe there are any documents in its possession responsive to this request.

7.      HSN objects to Request 7 on the grounds that the request as drafted is overly broad and imposes an undue and unreasonable burden on HSN to respond. In addition HSN objects to this request because it is so broad that it seeks production of documents which are protected by attorney client and work product privileges.

8.      HSN objects to Request 8 on the grounds that the request as drafted is overly broad and imposes an undue and unreasonable burden on HSN to respond. HSN further objects to this request on the grounds that it seeks production of documents which contain confidential proprietary information and trade secrets. In addition HSN objects to this request because it is so broad that it seeks production of documents which are protected by attorney client and work product privileges. Finally, HSN objects to this

request because it is so broad that it seeks some information which is clearly irrelevant
and is not reasonably calculated to lead to the discovery of admissible evidence. Subject
to these objections and without waiving such objections, HSN does not believe there are
any documents responsive to this request other than public blog entries already available
to Plaintiffs.

9.      HSN objects to Request 9 on the grounds that the request as drafted is
overly broad and imposes an undue and unreasonable burden on HSN to respond. HSN
further objects to this request on the grounds that it seeks production of documents which
contain confidential proprietary information and trade secrets, and also may contain
private information of customers. In addition HSN objects to this request because it is so
broad that it seeks production of documents which are protected by attorney client and
work product privileges. Finally, HSN objects to this request because it is so broad that it
seeks some information which is clearly irrelevant and is not reasonably calculated to
lead to the discovery of admissible evidence.

10.     HSN objects to Request 10 on the grounds that the request as drafted is
overly broad and imposes an undue and unreasonable burden on HSN to respond. HSN
further objects to this request on the grounds that it seeks production of documents which
contain confidential proprietary information and trade secrets. In addition HSN objects
to this request because it is so broad that it seeks production of documents which are
protected by attorney client and work product privileges.

11.     HSN objects to Request 11 on the grounds that the request as drafted is
overly broad and imposes an undue and unreasonable burden on HSN to respond. HSN

further objects to this request on the grounds that it seeks production of documents which contain confidential proprietary information and trade secrets. In addition HSN objects to this request because it is so broad that it seeks production of documents which are protected by attorney client and work product privileges.

12.     HSN objects to Request 12 on the grounds that the request imposes an undue and unreasonable burden on HSN to respond. HSN further objects to this request on the grounds that it seeks production of documents which contain confidential proprietary information and trade secrets. Finally, HSN objects to this request because it is so broad that it seeks some information which is clearly irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.

13.     HSN objects to Request 13 on the grounds that the request imposes an undue and unreasonable burden on HSN to respond. HSN further objects to this request on the grounds that it seeks production of documents which contain confidential proprietary information and trade secrets. Finally, HSN objects to this request because it is so broad that it seeks some information which is clearly irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.

L. Joseph Shaheen, Jr., Esq.
Florida Bar Number: 212385
**AKERMAN SENTERFITT**
401 E. Jackson Street, Suite 1700
Tampa, FL  33602-5250
Phone: (813) 223-7333
Fax: (813) 223-2837
Email: joseph.shaheen@akerman.com
Attorneys for HSN LP

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been furnished by facsimile and regular U.S. Mail to Jonathan Moskin, Esquire, Foley & Lardner LLP, 90 Park Avenue, New York, NY 10016 and Jonathan Moskin, Esquire, Foley & Lardner LLP, 100 North Tampa Street, Suite 2700, Tampa, Florida 33601, this _12_ day of March, 2010.

_____
Attorney

# EXHIBIT E

## Payne, Britton

| | |
|---|---|
| **From:** | Moskin, Jonathan |
| **Sent:** | Monday, March 22, 2010 7:14 AM |
| **To:** | 'joseph.shaheen@akerman.com' |
| **Cc:** | Payne, Britton |

**Subject:** RE: QVC v Your Vitamins

I hope your hearing went well on Friday.  Please let me know when you will be free today to discuss this matter - or simply confirm that HSN will be producing the requested documents.

Jonathan

---

**From:** Moskin, Jonathan
**Sent:** Friday, March 19, 2010 10:28 AM
**To:** joseph.shaheen@akerman.com
**Cc:** Payne, Britton
**Subject:** RE: QVC v Your Vitamins

I will wish you good luck in your hearing today, but I remain deeply concerned about your refusal to provide ANY substantive comments... and your client's refusal to produce ANY documents simply because it may choose to read some requests more broadly than we intended.  I have little doubt your client knows full well what we are seeking.

One of your messages indicated you would be free on Monday, so I see no reason to wait until Tuesday for a substantive response.

Best regards,

Jonathan

---

**From:** joseph.shaheen@akerman.com [mailto:joseph.shaheen@akerman.com]
**Sent:** Thursday, March 18, 2010 9:20 PM
**To:** Moskin, Jonathan
**Cc:** Payne, Britton
**Subject:** Re: QVC v Your Vitamins

Jonathan:
I am sitting in a conference room with a group of people in a totally unrelated case getting ready for court tomorrow. I am emailing you on a blackberry. I emailed you out of courtesy to explain to you why I could not respond. I will talk to you Monday or Tuesday.

---

**From:** Moskin, Jonathan
**To:** Shaheen, Joseph (Sh-Tpa)
**Cc:** Payne, Britton
**Sent:** Thu Mar 18 20:24:39 2010
**Subject:** RE: QVC v Your Vitamins

We were supposed to have had an answer a week ago.  Since then, after ignoring my messages for two days, you have managed to write me a number of emails, in none of which have you attempted to provide any substantive explanation for your objections.  The fact that you have resorted to name-calling about a supposed lack of courtesy when you continue to evade the simple questions I have asked you further

inclines me to believe there is no basis for the objections. I think if either one of us has grounds to protest the lack of courtesy, the answer would be clear; however, I don't find such name calling helpful and would prefer to stick to the facts.

I would greatly hope to avoid motion practice, so I ask you again: please give me some specific reason to understand the objection of unde burden so that I can try to address the point.

Thank you,

Jonathan

---

**From:** joseph.shaheen@akerman.com [mailto:joseph.shaheen@akerman.com]
**Sent:** Thursday, March 18, 2010 7:05 PM
**To:** Moskin, Jonathan
**Cc:** Payne, Britton
**Subject:** RE: QVC v Your Vitamins

Jonathan:

Please explain to me why you have to have an answer from me tomorrow as opposed to Monday or Tuesday of next week. I am in court tomorrow. I told you that. I have been in meetings since 7 am with witnesses and experts getting ready for court. I simply have not had time to address this. We did not make these objections lightly. I conferred with my client before submitting the objections and I have conferred with them since. We have some things to discuss with you but I'm just not in a position to do that before next week. That's one or 2 business days. If you cannot wait, there's not much I can do. I presume you'll file the motion in the district in which you issued the subpoena. In that regard you might take a look at Rule 3.01(g) of our local rules. I do not mean to be difficult but I expected more courtesy than this. I suggest you give me a time for next Tuesday and let's talk then.

---

**From:** Moskin, Jonathan [mailto:JMoskin@foley.com]
**Sent:** Thursday, March 18, 2010 7:03 PM
**To:** Shaheen, Joseph (Sh-Tpa)
**Cc:** Payne, Britton
**Subject:** Re: QVC v Your Vitamins

Another day has passed and you still have made no effort to answer the question you yourself raised as to alleged overbreadth. I would still welcome an answer now.

If not, I will call you tomorrow, and if we are unable to resolve the matter, we will have no alternative but to proceed with a motion to compel. Please let me know when is best to reach you.

Jonathan

---

**From:** Moskin, Jonathan
**To:** 'joseph.shaheen@akerman.com' <joseph.shaheen@akerman.com>
**Cc:** Payne, Britton
**Sent:** Wed Mar 17 20:59:19 2010
**Subject:** Re: QVC v Your Vitamins

Judge Robinson said she was going to expedite the process, not that she was going to limit the scope of discovery. We are still awaiting a formal order, but my best guess is that because it was promised 10 days ago, it will be issued soon and we won't have much time. That is part of the reason I'd like to get this moving.

We are not looking to overburden your client (or ourselves) with needless materials, and I hadn't thought that was

the likely effect of the requests. If you can give us some idea what is the source of the concern about overbreadth,
I am confident we can clarify what it is we really need and save your client needless work.

Thanks in advance,

Jonathan

---

**From:** joseph.shaheen@akerman.com <joseph.shaheen@akerman.com>
**To:** Moskin, Jonathan
**Cc:** Payne, Britton
**Sent:** Wed Mar 17 20:44:30 2010
**Subject:** RE: QVC v Your Vitamins

Jonathan:

Many of the objections were necessary because of the breadth of the requests. HSN is not adverse to a pared
down production. We were under the impression that the Judge had indicated that she was going to enter some
kind of discovery order which could limit discovery somewhat. We were hoping this would give some clarification
as well. Has the Judge indicated that she is not going to address discovery issues now? In light of that
expectation, this discovery request seemed a little premature to us. What's the status of that?

---

**From:** Moskin, Jonathan [mailto:JMoskin@foley.com]
**Sent:** Wednesday, March 17, 2010 7:37 PM
**To:** Shaheen, Joseph (Sh-Tpa)
**Cc:** Payne, Britton
**Subject:** Re: QVC v Your Vitamins

I am entirely sympathetic to your concerns, but it would also be nice for us to know if there is some genuine
reason why HSN has refused to produce ANY materials. Perhaps you can explain. I really can not tell if there is
some legitimate issue or if this is simply stonewalling (or perhaps merely buying time while you juggle your own
obviously busy schedule). I certainly don't want to make accusations without basis. You could help me by giving
me some more meaningful insight into what really is going on and when your client intends to produce actual
documents. We also are seeking a preliminary injunction so I feel some urgency here as well.

Please advise,

Jonathan

---

**From:** joseph.shaheen@akerman.com <joseph.shaheen@akerman.com>
**To:** Moskin, Jonathan
**Cc:** Payne, Britton
**Sent:** Wed Mar 17 19:14:40 2010
**Subject:** RE: QVC v Your Vitamins

Sorry Jonathan. We are preparing for an injunction hearing Friday and I have been out in meetings pretty much
constantly. Can this wait until Monday or Tuesday? If not, I'll figure something out. Let me know.



www.akerman.com | Bio | V Card

CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential information, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

CIRCULAR 230 NOTICE: To comply with U.S. Treasury Department and IRS regulations, we are required to advise you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this transmittal, is not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this e-mail or attachment.

---

**From:** Moskin, Jonathan [mailto:JMoskin@foley.com]
**Sent:** Wednesday, March 17, 2010 10:59 AM
**To:** Shaheen, Joseph (Sh-Tpa)
**Cc:** Payne, Britton
**Subject:** RE: QVC v Your Vitamins

I am still awaiting a response when you wish to discuss the matter.

Best regards,

Jonathan

---

**From:**   Moskin, Jonathan
**Sent:**   Monday, March 15, 2010 10:07 AM
**To:**     joseph.shaheen@akerman.com
**Cc:**     Payne, Britton
**Subject:**   QVC v Your Vitamins

I have reviewed HSN's attached response to the subpoena served in this matter.  The objections unfortunately give no insight into the actual reasons HSN has declined to produce any documents.

I would be happy to talk to try to understand better any actual concerns of your client.  Please let me know when you are free to talk.

Jonathan Moskin
<< File: Fax-Mar-12-2010-16-15-37-0161.pdf >>

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated

otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

3/29/2010

# EXHIBIT F



**Akerman**Senterfitt
ATTORNEYS AT LAW

Dallas
Denver
Fort Lauderdale
Jacksonville
Las Vegas
Los Angeles
Madison
Miami
New York
Orlando
Tallahassee
Tampa
Tysons Corner
Washington, DC
West Palm Beach

SunTrust Financial Centre, Suite 1700
401 E. Jackson Street
Tampa, Florida 33602-5250
www.akerman.com
813 223 7333 *tel*   813 223 2837 *fax*

March 22, 2010

**VIA FACSIMILE**

Jonathan E. Moskin, Esquire
Foley & Lardner LLP
90 Park Avenue
New York, NY 10016

Re:    *QVC, Inc. and QHealth, Inc. v. Your Vitamins, Inc. d/b/a Procaps Laboratories
       and Andrew Lessman*, Case No. 10-094 (SLR)
       Our File No. 236592

Dear Jonathan:

This letter is in response to your e-mail of this morning and numerous e-mails over the
last several days with respect to the pending Subpoena to HSN and our response thereto.

I have now had a chance to review this matter further with my client and I have also had
a chance to review the docket. Last week, I advised you that I was under the impression that the
Judge had indicated that she was going to enter some kind of discovery order which could limit
discovery. Your response to me was that "Judge Robinson said she was going to expedite the
process, not that she was going to limit the scope of discovery."

Now, having had a chance to review the transcript of the hearing before the Court, it
appears clear to me that the Judge did not envision any discovery going forward until she ruled
on what was appropriate. In that regard, at the conclusion of the telephone conference hearing
on February 24, 2010, Judge Robinson stated as follows:

THE COURT: All right. This is what I'm going to have you do.
I'm going to have each of you file with me by Monday, end of the
day Monday, what you propose to be appropriate focused

{TP579704;1}

Mr. Moskin
Page 2
March 22, 2010

discovery to get this on the fast track, and included in that, I would appreciate -- well, so I'd like to see that by Monday. What I will do is, I will take those plans and I will decide what is appropriate and focused and issue an order consistent with my decisions as to that. So I think that's our first step.

Both sides have now submitted proposals to the Court. The Defendants in their proposal request the Court to stay discovery.

It is clear that Judge Robinson has not yet decided what discovery to allow to proceed. It is equally clear that she wants to control the process. Until she rules, as promised, we believe that any response would be pre-mature and inconsistent with what the Court has clearly indicated she wishes to do. We are prepared to move forward with substantive discussions about our response as soon as the Court clarifies whether discovery will be allowed and what discovery will be allowed to proceed. Until that time, I see nothing useful to be gained by my client incurring the expense of having me involved in detailed discussions of our responses with you. We will be prepared to move with this on an expedited basis if the Court allows discovery to proceed. At this point, I think that is the only appropriate course of action.

Sincerely,

AKERMAN SENTERFITT

L. Joseph Shaheen, Jr.

LJS/jbc

{TP579704;1}

EXHIBIT G


FOLEY & LARDNER LLP

ATTORNEYS AT LAW

90 PARK AVENUE
NEW YORK, NY  10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3572
jmoskin@foley.com EMAIL

CLIENT/MATTER NUMBER
096420-0101

March 23, 2010

<u>Via EMail</u>

L. Joseph Shaheen, Esq.
Akerman Senterfitt
SunTrust Financial Center, Suite 1700
Tampa, FL 33602

Re:    <u>QVC, Inc. v Your Vitamins, Inc.</u>

Dear Joseph:

This will respond to your letter yesterday afternoon.

Following service by HSN of its broad objections to virtually all of the 13 categories of documents requested on February 26, you first declined to respond at all to my repeated emails on Monday through Wednesday last week, and then, with a broad brush insisted that the discovery requests were too broad. Although you ultimately advised me the one objection HSN had was that the categories allegedly were too broad, you then declined numerous requests from me to identify any specific respect in which any of the requests was in fact overbroad. As I repeatedly noted, the objections themselves provided no insight into the actual reasons HSN declined to produce any documents, and your refusal to identify any areas of overbreadth leaves us unable to try to address HSN's actual concerns, if any. After protesting that you were too busy too talk, you asked me to wait first until Monday or Tuesday, but then, for no apparent reason, indicated an unwillingness to talk at all on Monday.

In response to my additional requests to speak yesterday (Monday), you instead wrote to me yesterday afternoon confirming your own and your client's unwillingness to confer and HSN's complete refusal to provide any discovery in response to the subpoena issued from the court in the Middle District of Florida until the District Court in Delaware enters its own promised order expediting discovery in that forum.

I am bewildered by the logic of your letter yesterday, which, in effect, means that HSN is granting itself a protective order based on a self-serving guess why a different court has been delayed entering a promised order. Even if the Delaware Court were to change course and deny expedited discovery among the parties, I do not see how that would excuse HSN from complying with the subpoena in <u>this</u> Court. The time specified in the subpoena and in Rule 45 has come and gone, and it appears that the entire series of emails exchanged last week was simply a delaying game. Indeed, you never made any effort to substantiate the one purported ground for declining cooperation (which, based on my own reading of the requests, I never understood) and now have shifted to an entirely new excuse.

BOSTON           JACKSONVILLE      MILWAUKEE        SAN DIEGO            SILICON VALLEY
BRUSSELS          LOS ANGELES       NEW YORK         SAN DIEGO/DEL MAR    TALLAHASSEE
CHICAGO           MADISON           ORLANDO          SAN FRANCISCO        TAMPA
DETROIT           MIAMI             SACRAMENTO       SHANGHAI             TOKYO
                                                                         WASHINGTON, D.C.



**FOLEY & LARDNER LLP**

L. Joseph Shaheen, Esq
March 23, 2010
Page 2

     I continue to hope that motion practice will not be necessary, but we must insist that you agree <u>today</u> to produce the documents that should have been produced ten days ago or we will have no alternative but to move to compel.

Sincerely,

Jonathan Moskin

JEM:se

c.:    Britton Payne, Esq.

# EXHIBIT H



Akerman Senterfitt
ATTORNEYS AT LAW

Dallas
Denver
Fort Lauderdale
Jacksonville
Las Vegas
Los Angeles
Madison
Miami
New York
Orlando
Tallahassee
Tampa
Tysons Corner
Washington, DC
West Palm Beach

SunTrust Financial Centre, Suite 1700
401 E. Jackson Street
Tampa, Florida 33602-5250

www.akerman.com

813 223 7333 *tel*    813 223 2837 *fax*

March 23, 2010

**VIA FACSIMILE**

Jonathan E. Moskin, Esquire
Foley & Lardner LLP
90 Park Avenue
New York, NY 10016

      Re:    *QVC, Inc. and QHealth, Inc. v. Your Vitamins, Inc. d/b/a Procaps Laboratories and Andrew Lessman*, Case No. 10-094 (SLR)
            Our File No. 236592

Dear Jonathan:

    This is in response to your letter of today's date.

    In our e-mail exchange of last week, I tried to be as clear and courteous as I could be. I advised you that I was not ignoring your e-mails but that I was not in a position to have a substantive discussion on your discovery request because I was tied up on another matter. I inquired of where the case stood with respect to an anticipated decision by the Court on discovery. In response, you advised me that the Judge had indicated that she was going to rule on expediting discovery and not limit discovery in any fashion.

    On conclusion of my hearing last week, I had an opportunity to not only review the transcript of your telephone hearing with the Court, but also the parties' required submissions post-hearing. Two things are clear: (1) the Court has indicated that she may well limit discovery; and (2) the Defendants have pending a request to not allow any discovery at all. At this point in time, the Court has not rendered any decision on whether to allow discovery between the parties much less discovery of third parties such as HSN. It is absolutely clear that this Judge has expressed an intention to control the discovery process in some manner.

Mr. Moskin
Page 2
March 23, 2010

---

We have reviewed your subpoena demands and our objections carefully with our client.
As I have advised you before, to the extent that the Court allows this type of discovery to go
forward, we will be prepared to discuss whether we can resolve our objections in an expeditious
manner. However, to be clear, our objections are asserted in good faith and your requests are
objectionable. As with any discovery dispute, we are prepared to discuss these matters with you
in good faith at the appropriate time. However, in a case where the Court has clearly stated that
she will issue an order defining what, if any, discovery will be allowed, any such discussion
would be premature, potentially unnecessary, and without the guidance and direction the trial
court has promised.

Here is what we propose: rather than burden the Court in the Middle District by filing a
discovery motion in a case where the sitting trial judge has indicated that she may or may not
even allow discovery, we suggest that we both agree to defer this issue until the trial court issues
her discovery ruling. At that point, if she allows third party discovery like this to proceed, we
will confer with you as soon as reasonably possible to try to resolve our objections. If we
cannot, you can certainly file your motion at that point in time. You have indicated to me that
you believe the trial court's ruling is imminent. If so, you really are not giving up anything.
Please let me know if this is acceptable.

Sincerely,

AKERMAN SENTERFITT

L. Joseph Shaheen, Jr.

LJS/jbc

{TP580358;1}

# EXHIBIT I



**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

90 PARK AVENUE
NEW YORK, NY  10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3572
jmoskin@foley.com EMAIL

CLIENT/MATTER NUMBER
096420-0101

March 23, 2010

V͟I͟A͟ E͟M͟A͟I͟L͟

L. Joseph Shaheen, Esq.
Akerman Senterfitt
SunTrust Financial Center, Suite 1700
Tampa, FL 33602

Re:     QVC, Inc. v Your Vitamins, Inc.

Dear Joseph:

This will respond to your letter moments ago.

I am completely unaware of any request by defendants to preclude discovery, as you suggest, nor can I even imagine under what rule or what theory such a request even could be made.  To the contrary, defendants have served their own discovery requests and filed them with the Court seeking the Court's direction that QVC be required to answer the requests.  What my understanding is from every Delaware lawyer with whom I have spoken is simply that the courts there are terribly overburdened from the absence of one of the four intended sitting judges.  Precisely because of that problem, we must complete other discovery as expeditiously as we can so that we will be better able to comply with the Court's discovery order in Delaware.  However, once again, that is not your concern.  Indeed, as I said previously, even if the Delaware Court were to change course and deny expedited discovery among the parties, I do not see how that would excuse HSN from complying with the subpoena in this Court.

I thus repeat my request that HSN forthwith produce the documents requested or we will have no alternative but to move to compel.

Sincerely,

Jonathan Moskin

JEM:se

c.:     Britton Payne, Esq.

BOSTON
BRUSSELS
CHICAGO
DETROIT

JACKSONVILLE
LOS ANGELES
MADISON
MIAMI

MILWAUKEE
NEW YORK
ORLANDO
SACRAMENTO

SAN DIEGO
SAN DIEGO/DEL MAR
SAN FRANCISCO
SHANGHAI

SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO
WASHINGTON, D.C.

# EXHIBIT J



**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

90 PARK AVENUE
NEW YORK, NY  10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3572
jmoskin@foley.com EMAIL

CLIENT/MATTER NUMBER
096398-0101

March 26, 2010

<u>Via E-Mail</u>

L. Joseph Shaheen, Esq.
Akerman Senterfitt
SunTrust Financial Center, Suite 1700
Tampa, FL 33602

        Re:    <u>QVC, Inc. v Your Vitamins, Inc.</u>

Dear Joe:

    This is further to our conversation earlier today.

    My understanding of HSN's position is that it maintains its refusal to produce any documents in response to the subpoena served February 26 pending some further order from the court in Delaware and, indeed, now intends to move to quash the subpoena.

    I confirmed to you that I am completely unaware of any pending motion for a stay of discovery in the Delaware court, much less any request for a stay of third-party discovery. To the contrary, defendants have submitted to the Delaware court their own proposed discovery schedule and we are simply awaiting a promised order from Judge Robinson setting forth the terms on which she intends to expedite discovery. Thus, I am unaware what sort of order you anticipate the court in Delaware might render that would excuse HSN from complying with the subpoena. As I previously stated, even if the Delaware Court were to change course and deny expedited discovery among the parties (despite Judge Robinson's statement on the record), I do not see how that would excuse HSN from complying with the subpoena in <u>this</u> Court.

    If you think I have in any way misstated the conversation, please let me know.

                Sincerely,

                Jonathan Moskin

JEM:se

c.:    Britton Payne, Esq.

BOSTON         JACKSONVILLE      MILWAUKEE       SAN DIEGO         SILICON VALLEY
BRUSSELS      LOS ANGELES       NEW YORK        SAN DIEGO/DEL MAR   TALLAHASSEE
CHICAGO       MADISON          ORLANDO         SAN FRANCISCO       TAMPA
DETROIT        MIAMI            SACRAMENTO     SHANGHAI            TOKYO
                                                           WASHINGTON, D.C.

NYC_781073.1